625 So.2d 774 (1993)
Lionel "Bo" McClain
v.
STATE of Mississippi.
No. 91-KA-0186.
Supreme Court of Mississippi.
October 7, 1993.
*776 Dannye L. Hunter, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Jackson, Ellen Y. Dale, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
HAWKINS, Chief Justice, for the Court:
Lionel "Bo" McClain appeals his conviction in the Circuit Court of Scott County for the crime of receiving stolen property. He presents the following issues:
(1) Whether the evidence was insufficient as a matter of law to prove his guilty knowledge that the property he received was stolen;
(2) Whether the trial court committed reversible error in refusing to grant the following requested instructions:
(a) Circumstantial evidence Instruction D-9;
(b) Instruction D-6 that he was a competent witness in his own behalf;
(c) Instructions D-13 and D-14, which told the jury that if they found he obtained the property by burglary and larceny, they must return a verdict of "not guilty"; and
(3) Whether the verdict was contrary to the overwhelming weight of the evidence.
Finding no error, we affirm.

FACTS
On Monday morning, December 2, 1990, employees of Morton, Mississippi, discovered the Mayor's office had been burglarized and a .38 caliber Smith & Wesson pistol removed from the premises. On the same day, Myra Phillips, manager of nearby Laird's Ready to Wear, discovered that Laird's had also been burglarized and a quantity of jewelry, including necklaces, removed. Forced entry was accomplished by the intruder on each occasion.
During the early part of Sunday night, December 1, 1990, Ethel Polk saw Lionel "Bo" McClain (McClain) near a pay telephone in the Morton commercial district. Ms. Polk was looking for her daughter. McClain offered his assistance, entered Ms. Polk's vehicle, and rode with her while she searched for her daughter. The parties travelled to the community of Hillsboro and failing to find the missing daughter, returned to Morton where Ms. Polk made a police report that her daughter was missing. The parties then travelled toward Pelahatchie with McClain driving the vehicle. Ms. Polk testified as follows:
Q Okay. During any of this time, what, if anything, did the Defendant pull out and show you in the car?
A Well, he showed me a gun in the car before we even left Morton, before we even got the gas, when he first got in the car with it.
... .
A [I] asked him, I said, "What you doing with a gun this time of night anyway?" He said because he was out by hisself (sic) walking, and maybe he possibly had some enemies, somebody didn't like him. He had it for his own protection.
Q Did he say anything about where he had gotten it at that time?

*777 A No, sir.
... .
Q All right. Did you notice at any time whether or not a policeman fell in behind ya'll?
A Well, I had fell asleep, and he woke me up and told me that the police was behind us.
... .
Q All right; and, what happened when he did that?
A He was trying to give me the gun for me to throw it out, and I told him I wasn't throwing it out.
... .
Q When you refused to throw the gun out, what did the Defendant do then?
A He threw it out.
... .
Q All right. Tell us what happened after that, after the gun was thrown out of the car.
A Okay. The police pulled on up behind us, and we both got out, and I started telling the policeman our purpose for being there and who we was looking for.
After visiting with the police officers, McClain and Polk obtained a work excuse for Ms. Polk from her employer, gas for the vehicle, and returned to the area where McClain had thrown the pistol from the automobile. Polk related that the following occurred:
A Yes, sir. After we got the gas, then we went on back over there, and the gun was laying at the back quarter of the car in the street, on the side of the street.
... .
A He put the gun in the car. Then he started walking in front of the car.
Q Started walking in front of the car?
A Yes, sir.
Q All right. What happened next?
A Well, I was just sitting there looking at him, and he walked on up over to the driver's side up the street, and looking over in the bushes, and all of a sudden, he reached down and picked up, you know.
Q What did he pick up?
A A handful of jewelry.
... .
Q All right. What did he say about this jewelry?
A I asked him, I said, "How did you do that? What did you do? Throw it behind you?" because at the time, I couldn't figure out whether he had snatched it off his neck, because I hadn't seen him with any.
Q What did he say he had done?
A He said he just threw it from behind him.
Q When did he say he had thrown it behind him?
A When the police had stopped us.
The jewelry and pistol were identified as articles taken in the two burglaries.
McClain left the pistol with Polk and gave her one of the necklaces. She stated:
A He was getting ready to get out, and he taken the jewelry out, and he laid it on the car seat, and he asked me if I wore jewelry, and I told him, "No, not really." He says, "Well, which one of these do you like?" I said, "The red one." He said, "Well, here, it's yours."
McClain testified that he found the pistol and jewelry in a bag by a Coke machine in the Morton commercial district on the night of December 1 after 6:00 or 7:00 p.m. His testimony is as follows:
Q [A]nd where were you the first time you saw them?
A The first time I saw it, I come out of the arcade of Lee Kelly and stepped across the street where the machines are at, and it was dark then, getting dark. That's where I spotted them at, right beside a Coke machine.
... .
Q [H]ow did it come to your attention?
A I went over there to use the restroom, and as I looked down, there was a bag folded up pretty neat, and I was curious, and I kicked the bag. It was heavy. I picked it up. There was a gun and about five necklaces, and I kept them... .
*778 McClain admitted ditching the firearm in Pelahatchie when the police stopped him and Ms. Polk. The reason given by him for this action was:
A Well, at the time they had stopped me in Pelahatchie, I don't know the police, but he had pulled me over. I was driving, and by me knowing that I don't supposed to have a firearm on me, I got rid of it... .
McClain denied that he threw the jewelry out of the car and later retrieved it. His testimony concerning the jewelry was:
Q Well, what about the jewelry then, Mr. McClain? Why did you have to throw it out?
A Why did I throw the jewelry down? I did not throw the jewelry down. Ethel Lee Polk said I did.
Q Okay. She also said you told her that you threw it down. Is she right about that?
A She lied about that.
McClain confirmed giving one necklace to Polk, one to his sister, and one to his aunt.
The cause was submitted to a jury. A verdict of guilty was returned. The trial court then conducted a hearing pursuant to Miss. Code Ann. § 99-19-81 (Supp. 1990) providing for enhanced punishment, and upon completion, sentenced McClain to serve a term of five (5) years in the Mississippi Department of Corrections as an habitual offender.

WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUSTAIN THE CONVICTION?
McClain requested a directed verdict at the close of the State's evidence and a peremptory instruction when trial evidence was concluded. His motion to set aside the verdict is essentially and therefore is treated as a motion for judgment notwithstanding the verdict (JNOV). The three challenges by McClain (motion for directed verdict, request for peremptory instruction, and motion for JNOV) challenge the legal sufficiency of the evidence. Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court. This occurred when the Circuit Court overruled McClain's motion for JNOV. Wetz v. State, 503 So.2d 803, 807-08 (Miss. 1987). In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. Esparaza v. State, 595 So.2d 418, 426 (Miss. 1992); Wetz at 808; Harveston v. State, 493 So.2d 365, 370 (Miss. 1986); May v. State, 460 So.2d 778, 780-81 (Miss. 1984); Callahan v. State, 419 So.2d 165, 174 (Miss. 1982). The credible evidence consistent with McClain's guilt must be accepted as true. Spikes v. State, 302 So.2d 250, 251 (Miss. 1974). The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Wetz at 808; Hammond v. State, 465 So.2d 1031, 1035 (Miss. 1985); May at 781. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss. 1984); Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980). We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Wetz at 808; Harveston at 370; Fisher v. State, 481 So.2d 203, 212 (Miss. 1985).
Miss. Code Ann. § 97-17-69 (1972) states in pertinent part:
If a person ... receives in any manner ... personal property of any value, feloniously taken away from another, knowing the same to have been so taken, he shall be guilty of receiving stolen goods.
McClain maintains the evidence is insufficient as a matter of law to sustain proof of his knowledge that the pistol and jewelry were stolen. He relies on Whatley v. State, 490 So.2d 1220 (Miss. 1986); Thompson v. State, 457 So.2d 953 (Miss. 1984); Johnson v. State, 247 So.2d 697 (Miss. 1971).
We remain mindful that in prosecutions for receiving stolen property, guilty knowledge is the gist of the offense and must be proved. Tubwell v. State, 580 So.2d 1264, 1266 (Miss. 1991); Thompson at 954; Ellett v. *779 State, 364 So.2d 669, 670 (Miss. 1978); Crowell v. State, 195 Miss. 427, 15 So.2d 508 (1943). This does not mean that the accused shall have personally witnessed the theft, but that he received the property under circumstances that would lead a reasonable man to believe it was stolen. Tubwell at 1266; Ellett at 670.
In 66 Am.Jur.2d Receiving Stolen Property § 25, 313-14 (1973), we are told:
Evidence of the unexplained possession of recently stolen goods by one charged with unlawfully receiving them is admissible in a prosecution for the offense and is a strong circumstance to be considered with all the evidence in the case on the question of guilty knowledge. Such evidence may be sufficient to warrant a conviction where it is coupled with ... attempts at concealment. ...
... .
Guilty knowledge may be proved by direct evidence, or, since it is rarely the subject of direct and positive proof, by any surrounding facts or circumstances from which knowledge may be inferred.
... .
The circumstances surrounding the accused and his conduct then and immediately thereafter are relevant on the issue.
In Crowell, the defendant was charged with the crime of receiving stolen goods knowing the same to have been stolen. The proof on behalf of the State disclosed that Crowell purchased an automobile tire from one Will Evans who admittedly had stolen it. Crowell, when questioned by an officer as to how he came into possession of the recently stolen property, at first, claimed to have purchased it from a man in Hattiesburg whose name he did not know. He later admitted having purchased the tire from Will Evans with whom he was shown to be personally acquainted. It was not shown that at the time the defendant purchased the tire from Evans and received the same into his possession he had any knowledge of the fact that it had been stolen unless such knowledge could be inferred from his possession of the recently stolen property, coupled with the further circumstances that he made misrepresentations to the officer as to where he purchased the tire and as to whether he knew the person from whom he received it. This court held that the evidence was sufficient to warrant submission of the case to the jury as to whether the misrepresentations by Crowell showed guilty knowledge on his part.
In Van v. State, 477 So.2d 1350, 1351 (Miss. 1985), we stated that a defendant's "own actions subsequent to receipt may have a bearing on whether he knew or should have known the property to be stolen." Admittedly, unexplained possession of recently stolen property, standing alone, is insufficient to satisfy the guilty knowledge required as an element for the crime of receiving stolen property. Tubwell at 1266; Johnson v. State, 247 So.2d 697, 698 (Miss. 1971). McClain's conduct after receiving the property is therefore of great import. McClain explained his quick disposal of the firearm when law enforcement officers stopped his vehicle by relying on the reasonable excuse that "I don't supposed to have a firearm on me." On the other hand, he emphatically denied concealing or disposing of the jewelry on the same occasion although Ms. Polk testified that McClain returned to the area, searched for, and found the jewelry which he extracted from roadside bushes. McClain denied he threw or told Ms. Polk he threw the jewelry into the bushes stating, "She lied about that." McClain's acts of temporary disposal and concealment of the property were sufficient to create a jury issue of whether he knew or should have known the property to be stolen.
The cases of Tubwell, Whatley, Thompson, and Johnson are distinguishable. In each of those cases we held that a defendant's possession of recently stolen property was insufficient to sustain conviction. Here, we have additional elements of temporary disposal and concealment. This assignment is without merit.

THE INSTRUCTIONS

D-6
McClain requested, but was refused, Instruction D-6 which attempted to tell the jury the "defendant is a competent witness in *780 his own behalf." We condemned the requested instruction in Baker v. State, 391 So.2d 1010 (Miss. 1980), after an extensive review of the history and rationale for former approval. In Baker, we held the trial court did not err in refusing a similar instruction, overruled prior inconsistent decisions, and stated:
Defendants are not entitled to an instruction which informs the jury that the defendant is a competent witness in his own behalf ... Cases ... contrary to the conclusions reached here ... are overruled.
Baker, at 1012.
In Johnson v. State, 452 So.2d 850, 854 (Miss. 1984), we reaffirmed Baker and stated:
By statute, every defendant in Mississippi is competent to testify in his own behalf. Miss. Code Ann. § 13-1-9 (1972). However, in Baker v. State, 391 So.2d 1010 (Miss. 1980), this Court held that defendants are not entitled to an instruction which informs the jury that the defendant is a competent witness in his own behalf. Baker overruled prior case law to the extent that it was contrary to the above mentioned rule.
There was no error in the trial court's refusal of Instruction D-6.

D-9
McClain requested but was refused Instruction D-9 which contains the following language as to the State's burden of proof in a circumstantial evidence case:
[I]t must be so strong as to establish the guilt of the Defendant not only beyond every reasonable doubt and to a moral certainty, but the evidence must be so strong as to exclude every other reasonable hypothesis, or supposition except that of guilt. .. . [T]he evidence must show that no other person except the Defendant could have committed the crime charged. (emphasis ours)
In cases where one is charged with receiving stolen property knowing that the property was stolen and the State's proof of guilty knowledge is restricted to circumstantial evidence, we have consistently stated that the State bears the burden to prove the accused's guilt beyond every reasonable doubt and to the exclusion of every reasonable hypothesis of his innocence. Lewis v. State, 573 So.2d 713, 715 (Miss. 1990); Whatley v. State, 490 So.2d at 1223 (quoting Rodgers v. State, 222 Miss. 23, 29, 75 So.2d 42 (1954)).
Instruction D-9 is flawed, however, in stating that the State's evidence "should exclude every other reasonable hypothesis or supposition except that of guilt," and additionally requiring the State to prove "that no other person except the defendant could have committed the crime charged."
In Billiot v. State, 454 So.2d 445, 461-62 (Miss. 1984), a circumstantial evidence instruction was requested and refused in the trial court. On appeal, we refused to reverse the trial court for its failure to grant the instruction, and stated:
Appellant failed to request proper circumstantial evidence instructions. Having failed to request them, he cannot now place the trial court in error on this issue.
In Sudduth v. State, 562 So.2d 67 (Miss. 1990), we held that the trial court did not err in excluding a requested instruction which required the jury to say on their oath that the defendant was guilty beyond a reasonable doubt and "that there is no other way to account for the evidence in this case." In Sudduth, we stated, "The trial court found the instruction confusing and we agree." Id. at 72.
The trial court did not err in refusing Instruction D-9.

D-13 and D-14
McClain requested but was refused Instructions D-13 and D-14 which stated, in effect, that if the jury found that McClain obtained possession of the pistol and jewelry by burglarizing the Mayor's office and Lairds, then they must return a verdict of "not guilty."
We recognize that one may not feloniously receive what he has stolen. Williams v. State, 595 So.2d 1299, 1303 (Miss. 1992); Whatley at 1223. The flaw in the appellate contention, however, is the fact that there is no evidence McClain came into *781 possession of the property by burglarizing the buildings. The State charged McClain with receiving the property from another knowing it to be stolen. McClain admits receiving the property but contends he had no knowledge it was stolen. Since there is no evidence of a felonious breaking and entering the buildings by McClain, or a "taking" of the property by him, the jury could not have made such a finding. Williams at 1303. The trial court did not err in refusing Instructions D-13 and D-14.

WAS THE VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
McClain's argument in support of this issue is without cited authority. We remain steadfast to rule that failure to cite any authority may be treated as a procedural bar, and we are under no obligation to consider the assignment. Smith v. Dorsey, 599 So.2d 529, 532 (Miss. 1992); RC Petroleum Co., Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990); Brown v. State, 534 So.2d 1019, 1023 (Miss. 1988); Shive v. State, 507 So.2d 898, 900 (Miss. 1987); Read v. Southern Pine Electric Power Assn., 515 So.2d 916, 921 (Miss. 1987); Pate v. State, 419 So.2d 1324, 1326 (Miss. 1982).
Moreover, the challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion. Procedurally such challenge necessarily invokes Miss.Unif.Crim.R. of Cir.Ct.Prac. 5.16. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion, and on review we accept as true all evidence favorable to the State. Wetz at 807-08.
The uncontradicted proof in the record shows that the pistol and jewelry were stolen during the night of December 1, 1990, and that McClain was in possession of both items during the same night. The only controverted element of the crime was McClain's guilty knowledge. While stating that the stolen items in his possession on the night of December 1 were found by him shortly after they were feloniously taken, McClain made an immediate attempt to temporarily dispose of and conceal them when the vehicle driven by him was stopped by law enforcement officers. McClain offered no explanation for his conduct in throwing the jewelry into roadside bushes when confronted by the officers. Ms. Polk observed his actions and testified concerning them. Although McClain maintained Ms. Polk was lying, the jury obviously believed her.
The jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed. Lewis v. State, 580 So.2d 1279, 1288 (Miss. 1991); Benson v. State, 551 So.2d 188, 193 (Miss. 1989); Dixon v. State, 519 So.2d 1226, 1228 (Miss. 1988); Temple v. State, 498 So.2d 379, 382 (Miss. 1986).
Juries may draw rational inferences from the conduct of the accused relative to the stolen property. The jury was justified in finding McClain attempted to temporarily dispose of and thereby conceal his possession of the stolen articles.
In Minter v. State, 583 So.2d 973 (Miss. 1991), we held the evidence was sufficient to present a jury issue on whether the defendant knew the property was stolen when received, where the defendant initially falsely denied to the arresting officer that he had received the property. In Minter, we stated:
Minter challenges the sufficiency of the evidence. There is no question but that the property was stolen and Minter received it. The sole question, therefore, is whether there was sufficient evidence adduced to make a jury issue that Minter knew the property was stolen when he received it. Minter's state of mind could only be shown by his conduct. His false denial to the sheriff that he had received the property made this a jury issue... .
Minter, 583 So.2d at 974.
Guilty knowledge, an essential element of the offense, is rarely the subject of direct proof. It is often properly inferred from various circumstances. McClain's temporary disposition and concealment of the stolen jewelry was a potent fact from which the jury could infer guilt.
*782 Accepting as true the evidence favorable to the verdict, we are not convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Wetz at 812; Temple at 382; Groseclose v. State, 440 So.2d 297, 300 (1983). The trial court did not abuse its discretion in denying McClain's motion for a new trial.
AFFIRMED.
PRATHER, P.J., SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, JR. and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in result only.