LEE, J.,
for the Court:
¶ 1. Pamela Ivy was indicted on December 9, 1996, on a charge of felonious abuse of a vulnerable adult under Miss.Code Ann. § 43-47-19(1) and (3) (Rev.1993). Ivy was convicted of the lesser-included-offense of misdemeanor abuse of a vulnerable adult under Miss.Code Ann. § 43-47-19(2) (Rev.1993) and sentenced to serve a term of one year in the Coahoma County Jail and pay a fine of $500. She appeals her conviction and sentence to this Court.
A. FACTS
¶ 2. In the early morning hours of August 6, 1996, Pamela Ivy was working the third shift at Delta Manor, a home for the mentally retarded in Clarksdale, Mississippi. The third shift began at 10:00 p.m. and ended at 6:00 a.m. the following morning. Ivy was employed as a member of the direct care staff. Her responsibilities were to assist the clients of the home in any manner of everyday life with which they needed assistance.
¶ 3. Sometime after midnight, Ivy began to look for her time card so that she might “clock out” to take a short break. Upon finding her time card in the garbage can, she continued with her assigned duty of cleaning the break room. When she returned from cleaning the break room her time card was missing for the second time. *1051 After a diligent search, she began to ask those around if they knew where the time card was. She questioned Ms. Kemp, Ms. Dampier, and Ms. Mattie Brownridge, all of whom were close by. Ms. Brownridge is a 59 year old lady, a resident of Delta Manor, who has been diagnosed with psycho effective disorder, a mild mental retardation. According to Ivy, Brownridge was known for moving things that did not belong to her, so Ivy began to question her about the location of the time card. Brownridge replied that she did not move the card. At that point Ivy went down the hall to Brownridge’s room with Brown-ridge following her. Ivy took a dress of Brownridge’s from her closet and told her that she could have her dress back when she returned Ivy’s time card. Brownridge again replied that she did not have Ivy’s time card. At this point Brownridge began to chase Ivy to try to regain possession of her dress, and Ivy went into the hairdressing room.
¶4. It is at this point that Ivy’s story diverges from that of the witnesses of the incident. There were two witnesses to the incident, Ms. Kemp and Ms. Dampier. Both Kemp and Dampier were co-workers of Ivy’s on the direct care staff and both testified as to what happened that morning at Delta Manor. Their stories are identical. According to the two witnesses, when Ivy went into the hairdressing room, the door was cracked with Ivy on the inside and Brownridge on the outside. Brown-ridge was pleading with Ivy to return her dress, and Ivy was responding that she could not have her dress until she returned the time card. While this was going on, Nurse Josie Jones came on the hall and told Ivy to return the dress and told Brownridge to return the time card if she had it. She then continued making her rounds.
¶ 5. When Ivy came out of the hairdressing room, Brownridge grabbed the dress. The two began to pull on the dress, and at the point where Brownridge had almost pulled the dress from Ivy’s hands, Ivy slapped Brownridge across the neck and cheek with an open hand. Brownridge was stunned initially, but appearing very upset, she began to fight back. According to Dampier, when Brownridge began fighting, Ivy “began to slam Mattie up against the wall, trying to make her let go of the dress so she wouldn’t get control of the dress, Ms. Mattie.” This happened two or three times, then Ivy hit her with her fist and she fell to the floor. Brownridge got up and again began to try to fight Ivy, but Ivy hit her again and she again fell to the floor. When Brownridge got up again, Ivy put her knee in the small of Brownridge’s back with her arms stretched out straight behind her. Brownridge was yelling for Ivy to let her go because she was in pain.
¶ 6. Ivy’s recollection of the incident is markedly different. Ivy claims that she realized at the point when she was in the hairdressing room that Brownridge was not going to return her time card, so she gave the dress back, and Brownridge took it to her room. Then, Ivy claims, Brown-ridge came back out of her room and back to where Ivy was, and began to try and hit Ivy. Ivy claims that she in no way hurt or attempted to hurt Ms. Brownridge. She asserts that she was merely trying to restrain her until her fellow workers called a nurse. She alleged that she restrained her by holding her arms. She testified that she knew of no reason why her former coworkers would falsify these allegations against her.
¶ 7. In addition to the two witnesses’ testimony, the administrator of Delta Man- or, Nurse Josie Jones, and Brownridge’s trainer each testified that they had seen “fresh bruises” on Brownridge’s arm on August 6,1996. Additionally, Nurse Jones testified that she made out an incident report on Mattie Brownridge dated August 6, 1996 at 4:30 a.m. The report was admitted into evidence and Nurse Jones read the following from the report: “Client was assessed and observed on the upper right anterior forearm fingerprint bruises and observed on the right forearm anterior one *1052 small scratch approximately centimeters small with small amount of bleeding.” She testified further that she examined Brown-ridge at a time when she was still upset and excited and that Brownridge told her that Ivy had hit her.
B. ANALYSIS
¶ 8. In the face of the five witnesses who testified against her, Pamela Ivy denies that she in any way abused Ms. Mattie Brownridge. She asserts as her one issue on appeal the following: “The Evidence was insufficient to support a verdict of guilt for abusing a vulnerable adult.” The pertinent portion of the statute under which she was convicted reads as follows:
§ 43-47-19. Prohibition against abuse, neglect, or exploitation; notification of district attorney; penalties; relation to other laws.
(1) It shall be unlawful for any person to abuse, neglect or exploit any vulnerable adult.
(2) Any person who willfully commits an act or omits the performance of any duty, which act or omission contributes to, tends to contribute to or results in the abuse, neglect or exploitation of any vulnerable adult shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine not to exceed One Thousand Dollars ($1,000) or by imprisonment not to exceed one (1) year in the county jail, or by both such fine and imprisonment.
(8) Any person who willfully inflicts physical pain or injury upon a vulnerable adult shall be guilty of felonious abuse and/or battery of a vulnerable adult and, upon conviction thereof, may be punished by imprisonment in the State Penitentiary for not more than twenty (20) years.
Miss.Code Ann. § 43-47-19 (Rev.1993). Although she was indicted under sections (1) and (3) of the statute, she was convicted under section (2) of the statute as the result of the granting by the trial judge of a lesser-included-offense instruction.
¶ 9. Although at trial she completely denied having abused Ms. Brownridge in any way, on appeal her argument is that the State failed to prove the willfulness of her actions. She claims simply that “[t]he evidence to support such a conviction was insufficient.” In concluding her argument Ivy claims that there was no evidence that would suggest that Mattie Brownridge was abused. Additionally, she argued that “[sjince there was an absentee] of force committed by Appella[nt], the State of Mississippi failed to produce any evidence of an act or omission which lead to abuse.”
¶ 10. This Court’s scope of review based on a challenge to the sufficiency of the evidence is well settled. In reviewing the trial court’s denial of a motion for a judgment notwithstanding the verdict, this Court reviews the sufficiency of the evidence in the light most favorable to the State. McClain v. State, 625 So.2d 774, 778 (Miss.1993). All credible evidence which is consistent with Ivy’s guilt must be accepted as true, and the State is given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id.
¶ 11. The evidence favorable to the State’s theory of the case demonstrates that Ivy did willfully commit an act of abuse against a vulnerable adult, Ms. Mattie Brownridge. Two witnesses testified to seeing Ivy physically abuse Brownridge. Three additional witnesses testified that they saw “fresh bruises” on Brownridge’s arm immediately subsequent to the report of abuse. The only evidence adduced at trial that would support Ivy’s theory of the incident came through her own testimony. All of the evidence, including five witnesses testimony against Ivy, points to Ivy’s guilt. Based on all of the evidence presented at trial and discussed in detail above, the State clearly proved all of the elements of the crime, and the jury was entitled to find that Ivy committed misdemeanor abuse of a vulnerable adult. We *1053 find Pamela Ivy’s argument and appeal completely lacking in merit.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF MISDEMEANOR ABUSE OF A VULNERABLE ADULT AND SENTENCE OF ONE YEAR IN THE CUSTODY OF THE COAHOMA COUNTY JAIL AND PAY A FINE IN THE AMOUNT OF $500 IS AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE TAXED TO COAHOMA COUNTY.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, IRVING, KING, PAYNE, AND SOUTHWICK, JJ„ CONCUR.