774 So.2d 469 (2000)
Larry CARR, Jr. a/k/a Larry D. Carr, Jr. a/k/a Larry Darnell Carr a/k/a Larry Darnell Carr, Jr. a/k/a `Spanky', Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01483-COA.
Court of Appeals of Mississippi.
August 1, 2000.
Rehearing Denied October 3, 2000.
Certiorari Denied December 21, 2000.
*470 David L. Walker, Southaven, Attorney for Appellant.
Office of the Attorney General by W. Glenn Watts, Attorney for Appellee.
BEFORE McMILLIN, C.J., LEE, AND THOMAS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Larry Carr, Jr. was convicted by a jury in the Circuit Court of Yalobusha County of murder arising out of the shooting death of Kawarn Rounds. Carr has appealed his conviction to this Court. He assigns three trial errors for consideration that, according to him, would require us to reverse his conviction. First, he claims that the trial court erred in instructing the jury on murder because the evidence was insufficient as a matter of law to support a murder charge. Secondly, Carr asserts that the court erred in denying his peremptory instruction of not guilty at the close of all the evidence. Finally, Carr argues in the alternative that, if he is not entitled to relief under either of his first two issues, then certainly he is entitled to a new trial because the guilty verdict was against the weight of the evidence. Issues one and two present the same question, i.e., was the evidence presented by the prosecution sufficient to support a guilty verdict on the charge of murder. Because they merely present the same issue in different form, we will address them together.
¶ 2. Having considered the issues presented by Carr in this appeal, we conclude them to be without merit and affirm his conviction.

I.

Facts
¶ 3. The evidence, taken in the light most favorable to the State, reveals that in late March 1998, Carr and the shooting victim, Rounds, became engaged in a dispute when Rounds blocked a business driveway with his vehicle at a time when Carr and a friend desired to use the driveway to exit the business parking lot. Carr, apparently convinced that Rounds was purposely ignoring his efforts to have him clear the driveway, exited the vehicle he was riding in and walked to the driver's side window of Rounds's vehicle to more pointedly urge Rounds to clear the way. Dissatisfied with Rounds's response, Carr returned to the vehicle he was traveling in and retrieved a handgun. Carr returned to Rounds's vehicle, fired one shot into the door of Rounds's vehicle, then stepped back and fired a second shot which struck Rounds in the chest. That shot inflicted a wound that ultimately proved fatal to Rounds. All eye-witnesses to the events called by the State confirmed that Rounds was not armed nor did he make any moves in the moments before the shooting that could be construed as aggressive in nature. After the shooting, Carr and Horton fled in Horton's automobile but were arrested shortly thereafter.
¶ 4. Carr's version of the events differed somewhat from the evidence presented by the prosecution. On the day of the shooting, Carr gave a statement to the sheriffs office indicating that he used the handgun only in an effort to frighten Rounds and that the gun went off accidentally. Several weeks later, Carr gave another statement in which he claimed for the first time *471 that he shot Rounds because he saw him reaching for something that he feared was a weapon of some sort. At trial, Carr at different times offered conflicting explanations for the first shot, saying at one time that he fired the shot to frighten Rounds, but later claiming that he fired in self-defense when he thought Rounds was reaching to retrieve a gun. As to the second shot, Carr testified that the gun went off accidentally when Rounds grabbed at the gun and attempted to wrestle it from Carr's possession.
¶ 5. Carr called three witness who claimed to be eye-witnesses to the events. One related a version of events that closely resembled that offered by the State's witnesses. Another of the witnesses related a version that, in general, supported Carr's account of the incident. The third witness seemed confused and offered essentially no evidence that would have been helpful to the jury.
¶ 6. The jury was instructed as to both murder and manslaughter and returned a conviction for murder.

II.

Sufficiency of the Evidence
¶ 7. Carr's first two assignments of error challenge the sufficiency of the evidence to support his conviction for murder. In his first assignment of error, Carr argues that the court erred in instructing the jury on murder because there was not evidence in the record to support such an instruction. See, e.g., Gibson v. State, 731 So.2d 1087 (¶ 17) (Miss.1998). Specifically, Carr argues that the credible evidence demonstrates beyond question that the shooting was either accidental or in necessary self-defense. Alternatively, he argues that the State failed to present sufficient evidence to support a finding that he acted with premeditation and deliberate design in the shooting. His second assignment of error urges that, because the evidence overwhelmingly points to the conclusion that the shooting was accidental, a reasonable jury could have only found him not guilty, and thus, the trial court erred in denying his peremptory instruction.
¶ 8. These issues, at their foundation, involve the same fundamental question: Was the evidence sufficient to support a conviction for murder? In considering such challenges to the sufficiency of the evidence, the reviewing authority must view the evidence in the light most favorable to the State and must conclude that the jury drew all favorable inferences that could reasonably be drawn from the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). If, upon a review under that standard, the evidence is found to be such that reasonable men could only have found the defendant not guilty with respect to one or more of the elements of the crime, the reviewing court must reverse the conviction. Id. Otherwise, the reviewing court's obligation is to affirm. The reviewing court must keep in mind that matters regarding the credibility of witnesses and the proper weight to give the evidence are left to the jury. Id. Mindful of these considerations, we will consider the evidence presented at trial.
¶ 9. Carr was charged with deliberate design murder. In order to sustain Carr's conviction, the State had to prove that Carr killed Rounds, not in necessary self-defense nor through accident and misfortune, with the deliberate design to effect Rounds's death. Miss.Code Ann. § 97-3-19(1)(a) (Supp.1999). The concept of "deliberate design" is drawn from the common law notion of "malice aforethought," which was used to distinguish between murder and manslaughter. Guest v. State, 96 Miss. 871, 52 So. 211, 212 (1910).
¶ 10. According to three witnesses who testified on behalf of the State, Carr approached Rounds and berated him for ignoring the request to move his car. Carr then deliberately returned to the automobile he had been riding in, retrieved a gun from the back seat, and went back to Rounds's vehicle where, according to multiple witnesses, he placed the gun to *472 Rounds's head. There was evidence that Carr then took a step back and fired a shot into the door of Rounds's car. The State presented evidence to show that Carr then took a second step back, deliberately aimed the gun at Rounds, and fired the shot that mortally wounded Rounds. One of the State's witnesses testified that Rounds was attempting to put his car in gear to drive away when Carr fired the second shot. All three of the State's eyewitnesses testified that Rounds did not have a weapon nor did he do anything that might have suggested to Carr that he was armed. The witnesses all verified that Rounds had not made any efforts to push or grab Carr's gun when the second shot was fired.
¶ 11. Though a homicide must be committed with "deliberate design" in order to constitute murder, there is no requirement that the intention to kill be formed for any particular length of time in advance of the event. Blanks v. State, 542 So.2d 222, 227 (Miss.1989). Though the episode in this case was, from start to finish, of relatively short duration, we are satisfied that the jury could reasonably conclude that Carr was carrying out a fully-formed intention to end Rounds's life when he retrieved a gun from Horton's car and methodically fired two shots, the second of which was deliberately aimed at Rounds's person. It avails Carr nothing that his intention may not have been formed until after his face-to-face encounter with Rounds only moments before the fatal shot was fired. The time it took to return to the vehicle, retrieve the gun, and return to Rounds's vehicle was, in the eyes of the law, ample time to formulate the deliberate design to kill Rounds within the meaning of this State's murder statute.
¶ 12. The jury clearly rejected both of Carr's mutually-contradictory theories of self-defense and accident. The evidence to support these theories came largely from Carr himself and, as we have already observed, Carr seemed unable to settle on a version of events that he could unequivocally advance as the truth. His evidence as to either theory was certainly not so compelling that the jury was obligated to accept it as true. The evidence presented a disputed issue of fact to be resolved by the jury. At the most, it could only raise questions regarding whether the verdict might have been against the weight of the evidence, entitling Carr to a new trial, which is distinct from a challenge to the sufficiency of the evidence. (This aspect of the appeal is considered in the next portion of this opinion.)
¶ 13. The State presented sufficient evidence to support a conviction for the crime of murder. Carr's first two issues challenging that notion are without merit.

III.

Weight of the Evidence
¶ 14. As his final assignment of error, Carr asserts that the verdict is against the overwhelming weight of the evidence. In support of this assignment of error, Carr incorporates the argument he made in his first two assignments of error without making any additional meaningful argument.
¶ 15. The contention that the verdict is against the overwhelming weight of the evidence must first be raised in the defendant's motion for a new trial. URCCC 10.05; Carter v. State, 743 So.2d 985 (¶ 24) (Miss.1999). The trial court has substantial discretion in ruling on a motion for a new trial and should only grant the motion where allowing the verdict to stand would result in an unconscionable injustice. Id. at 989 (¶ 25). When reviewing a trial court's denial of a motion for a new trial, this Court must consider the evidence in the light most favorable to upholding the verdict. Herring v. State, 691 So.2d 948, 957 (Miss.1997). We must keep in mind that it is the jury's responsibility to resolve matters regarding the weight of the evidence and the credibility of witnesses. Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). This Court can only reverse *473 upon finding that the trial court has abused its discretion in denying the new trial motion. Id.
¶ 16. Carr seemed unable to settle on a version of events consistent with his innocence that he was comfortable with. In various statements and even in his trial testimony, he fluctuated between a version that was consistent with what he deemed to be an accidental homicide and one in which he would have the jury believe he was acting in necessary self defense. This Court has serious reservations as to whether, even assuming the truth of Carr's versions of events, they would require his acquittal as a matter of law. It would not seem that a person could, without adequate provocation, menacingly confront another individual with a loaded pistol and then claim either self-defense or accident when the other individual took some reasonable steps in those circumstances to protect himself from apparently imminent harm. Whether those steps involved an attempt to meet threatened force with like force or involved an attempt to disarm the aggressor, such actions would not totally excuse an ensuing homicide that occurred when the attempts went awry. However, in this instance, we do not need to delve further into such considerations since we are convinced that, viewing the matter in the light most favorable to the verdict, the evidence that Carr purposely killed Rounds under circumstances that would constitute the crime of murder is overwhelming. Any claim that the weight of the evidence, in actuality, lay in favor of a verdict of not guilty is without merit.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF YALOBUSHA COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YALOBUSHA COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.