917 So.2d 808 (2005)
Marvin Lewis BECKUM, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00420-COA.
Court of Appeals of Mississippi.
December 13, 2005.
*811 Jonathan Michael Farris, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before KING, C.J., BRIDGES and GRIFFIS, JJ.
BRIDGES, J., for the Court.

PROCEDURAL HISTORY
¶ 1. On November 17, 2003, a jury sitting before the Forrest County Circuit Court found Marvin Beckum, Jr. guilty of robbery. The circuit court sentenced Beckum, a habitual offender, to thirty years without the possibility of parole. On January 7, 2004, Beckum filed an unsuccessful motion for judgment notwithstanding the verdict or, alternatively, a new trial. Aggrieved, Beckum appeals and advances the following issues, listed verbatim:
I. THE TRIAL COURT ERRED IN DENYING [BECKUM'S] MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND/OR MOTION FOR NEW TRIAL AND IN REFUSING TO GRANT THE PEREMPTORY INSTRUCTION.
II. THE TRIAL COURT ERRED IN REFUSING TO GRANT [BECKUM'S] REQUEST FOR A CONTINUANCE.
III. THE TRIAL COURT ERRED IN DENYING [BECKUM'S] BATSON OBJECTION.
IV. THE TRIAL COURT ERRED IN DENYING [BECKUM'S] MOTION FOR RECUSAL.
Finding no error, we affirm.

FACTS
¶ 2. Beckum stood accused of robbing Mr. Robert Nimocks. At trial, Mr. Nimocks testified to the following events. Around 7:30 p.m. on September 1, 2003, someone rang the doorbell at Mr. Nimocks's house in Hattiesburg, Mississippi. Mr. Nimocks, then eighty-eight years old, answered the door. A young man stepped inside Mr. Nimocks's house and asked Mr. Nimocks for a glass of water. Mr. Nimocks recognized the young man. Mr. Nimocks also remembered that, several years prior, the young man washed the windows at Mr. Nimocks's house.
¶ 3. Mr. Nimocks gave the young man a glass of water and they discussed whether Mr. Nimocks had any chores that the young man could perform. Mr. Nimocks did not have any work for the young man. Mr. Nimocks inserted some money into his wallet. As Mr. Nimocks went to put his wallet in his back pocket, the young man attacked and robbed him. According to Mr. Nimocks's testimony:
[T]he young man tackled me around the neck, and I don't know just how it happened, but I ended up on the floor with my head skint, my glasses turned up, and he was sitting straddling me wanting to know where my money was or where my billfold was, and all the time he was asking for it, he was reaching for it, and he grabbed it out of my hand, and he sat on my back, and counted the money.
¶ 4. Not content with Mr. Nimocks's money, the man ripped Mr. Nimocks's phone out of the wall and demanded the keys to Mr. Nimocks's car. Mr. Nimocks complied. The young man took Mr. Nimocks's keys and left in Mr. Nimocks's gray 1984 Ford. Mr. Nimocks then called 911.
¶ 5. Five minutes later, Officer Tony Fontaine, a member of the Hattiesburg Police Department, arrived at Mr. Nimocks's house. Mr. Nimocks told Officer *812 Fontaine that the young man took his car and his money. Because the attacker knocked Mr. Nimocks's glasses off, Mr. Nimocks could only recall that the man had a round face, short hair, and wore sweat pants. Officer Fontaine reported the description of the suspect, Mr. Nimocks's car, and Mr. Nimocks's license plate.
¶ 6. Around midnight, Edward Biters, a police officer employed by the Forrest General Hospital, patrolled the hospital grounds. Officer Biters, aware of the descriptions provided by Officer Fontaine, saw a car that matched Officer Fontaine's description. Officer Biters followed the car, observed the license plate, and confirmed that the car was still listed as stolen. Officer Biters continued to follow the car. Officer Fontaine and Detective William McCormick, also with the Hattiesburg Police Department, joined Officer Biters in his pursuit.
¶ 7. The officers attempted to stop the car, but the driver sped up and attempted to evade them. The officers chased the car for seven to ten miles before the driver stopped at a house. When the driver stopped, he got out of the car and ran into the woods. Officer Fontaine got out of his car and chased the driver on foot. Officer Fontaine caught the driver approximately seventy-five to one hundred yards from the point at which he stopped Mr. Nimocks's car. The driver, Marvin Beckum, Jr., wore white tennis shoes, blue jean shorts, and a light colored shirt.
¶ 8. On September 2, 2003, Detective McCormick returned to Mr. Nimocks's house. During that visit, Detective McCormick showed Mr. Nimocks a photograph line up that contained five photographs and asked Mr. Nimocks whether he could identify the young man that robbed him. Mr. Nimocks picked out Beckum's picture.
¶ 9. At trial, the prosecution called five witnesses: Officer Fontaine, Mr. Nimocks, Officer Biter, Detective McCormick, and Jeffery Byrd, a crime scene investigator. Beckum did not present any evidence of his own. As mentioned, the jury convicted Beckum and Beckum filed unsuccessful motions for JNOV and for a new trial.

ANALYSIS

I. THE TRIAL COURT ERRED IN DENYING [BECKUM'S] MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND/OR MOTION FOR NEW TRIAL AND IN REFUSING TO GRANT THE PEREMPTORY INSTRUCTION.
¶ 10. In this issue, Beckum requests our review of three dispositions in the circuit court: (1) the circuit court's decision to overrule his motion for JNOV; (2) the circuit court's decision to overrule his motion for a new trial; and (3) the circuit court's decision to overrule his request for a peremptory instruction. A request for peremptory instruction and a motion for JNOV both challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). A motion for a new trial challenges the weight of the evidence. Carr v. State, 774 So.2d 469(¶ 15) (Miss.Ct.App.2000).

A. WAS THE EVIDENCE AGAINST BECKUM INSUFFICIENT TO SUPPORT THE JURY'S VERDICT?
¶ 11. Beckum's peremptory challenge and his motion for JNOV both challenged the sufficiency of the evidence at the time Beckum raised them. McClain, 625 So.2d at 778. This Court must review Beckum's last challenge. Id. Beckum last challenged the sufficiency of the evidence when he raised his motion for JNOV. Id.

*813 In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [Beckum's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Id. (citations omitted).
¶ 12. Beckum claims that the circuit court should have granted his motion for JNOV because the State presented insufficient evidence that Beckum was the young man who robbed Mr. Nimocks. To support his claim, Beckum notes that, on the day of trial, Mr. Nimocks could not identify him as his attacker. Beckum also submits that no evidence places him at Mr. Nimocks's house on September 1, 2003.
¶ 13. Beckum did not raise this specific allegation in his motion for JNOV or for a new trial. A motion for directed verdict and JNOV must be specific. Banks v. State, 394 So.2d 875, 877 (Miss.1981). Consequently, this allegation, raised for the first time on appeal, is procedurally barred.

B. WAS THE JURY'S VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 14. "The contention that the verdict is against the overwhelming weight of the evidence must first be raised in the defendant's motion for a new trial." Carr, 774 So.2d at (¶ 15) (citing URCCC 10.05). "The trial court has substantial discretion in ruling on a motion for a new trial and should only grant the motion where allowing the verdict to stand would result in an unconscionable injustice." Carr, 774 So.2d at (¶ 15). "When reviewing a trial court's denial of a motion for a new trial, this Court must consider the evidence in the light most favorable to upholding the verdict." Id. "We must keep in mind that it is the jury's responsibility to resolve matters regarding the weight of the evidence and the credibility of witnesses." Id. "This Court can only reverse upon finding that the trial court has abused its discretion in denying the new trial motion." Id. at 473. Beckum faces "a presumption that the judgment of the trial court is correct." Stack v. State, 860 So.2d 687(¶ 20) (Miss.2003) (citing Alexander v. State, 759 So.2d 411, 418 (Miss.2000)). "Beckum's burden is to demonstrate some reversible error." Id.
¶ 15. Beckum's motion for a new trial simply stated that "the jury's verdict... [was] against the overwhelming weight of the evidence." Beckum's challenge of the weight of the evidence merely concluded that the verdict was against the overwhelming weight of the evidence. Unquestionably, this is a vague and general statement. Beckum's brief, generalized, and conclusory argument failed to distinguish any particular deficiency in the proof, or to assert how the verdict is contrary to the overwhelming weight of the evidence. Accordingly, this issue is procedurally barred. Stack, 860 So.2d at (¶ 20). That being the case, we will not consider the merits of Beckum's claims.

II. THE TRIAL COURT ERRED IN REFUSING TO GRANT [BECKUM'S] REQUEST FOR A CONTINUANCE.
¶ 16. On November 13, 2003, four days before trial, Beckum filed a motion *814 for continuance. Beckum's two attorneys stated that they were unprepared for trial because they litigated three trials in the preceding three weeks and had also been involved in plea negotiations. The State objected to Beckum's request for a continuance. Citing Mr. Nimocks's age, his poor health and anxiety, and that Mr. Nimocks's daughter took off work to fly from Kansas City to support her father, the State argued that the circuit court should proceed with the trial as scheduled.
¶ 17. The circuit court noted that Beckum's two appointed attorneys were appointed a month prior to trial, that the charge against Beckum was not particularly difficult. Further, the circuit court held that Mr. Nimocks's age made it necessary to proceed with the trial as scheduled. Accordingly, the circuit court overruled Beckum's motion for continuance. Beckum appeals that decision on the same basis he presented to the circuit court.
¶ 18. "The decision to grant or deny a continuance is left to the sound discretion of the trial court." Stack, 860 So.2d at (¶ 7). "Unless manifest injustice appears to have resulted from the denial of the continuance, this Court should not reverse." Lambert v. State, 654 So.2d 17, 22 (Miss.1995). "The burden of showing manifest injustice is not satisfied by conclusory arguments alone, rather the defendant is required to show concrete facts that demonstrate the particular prejudice to the defense." Stack, 860 So.2d at (¶ 7) (internal quotations omitted).
¶ 19. Here, we cannot conclude that the circuit court abused its discretion when it overruled Beckum's motion for continuance. The circuit court clearly articulated its reasoning. Mr. Nimocks was the victim and the only eyewitness to the crime. Concerned with the prospect that Mr. Nimocks, eighty-eight years old, might suffer illness or otherwise be unable to testify at a later date, the circuit court pressed forward with trial. Moreover, while Beckum claims his attorneys had little time to prepare for trial, Beckum presents no argument that shows how the circuit court's decision caused him prejudice or "manifest injustice." Beckum does not claim that his attorneys would have acted differently or presented a different strategy, had they received their continuance. As such, we affirm the circuit court's decision to overrule Beckum's motion for continuance.

III. THE TRIAL COURT ERRED IN DENYING [BECKUM'S] BATSON OBJECTION.
¶ 20. During jury selection, one of Beckum's attorneys raised a Batson challenge. Beckum's attorney stated that "[w]e've come across two black jurors during this whole time and both of them have been struck." Those two jurors were Ms. Beverly Lewis and Mr. Jones.[1]
¶ 21. As for Mr. Jones, the prosecution stated that it excluded Mr. Jones because he was unresponsive, disinterested, and did not pay attention to one of the prosecutors. The prosecution claimed it decided to exclude Ms. Lewis for strategic purposes. That is, the prosecution excluded Ms. Lewis to leave room on the jury for jurors that, according to the prosecution, were more ideal for their purposes because they had been victims of robbery. The circuit court determined that the prosecution had race-neutral reasons for excluding Mr. Jones and Ms. Lewis. As such, the circuit court overruled Beckum's Batson challenge. Aggrieved by that decision, Beckum appeals.
¶ 22. In Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) *815 the United States Supreme Court held that a defendant may establish a prima facie case of purposeful discrimination during jury selection based solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish the prima facie case under Batson, a defendant must demonstrate three elements: (1) that the defendant is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen of his race; and (3) that facts and circumstances infer that the prosecutor used his peremptory challenges for the purpose of striking minorities. Tanner v. State, 764 So.2d 385(¶ 12) (Miss.2000).
¶ 23. "Once the defendant sets forth a prima facie case, the burden shifts to the State to come forward with a race-neutral explanation for challenging the jurors." Id. at (¶ 13) (internal quotations omitted). "The trial court must then determine whether the objecting party has met its burden of proving there has been purposeful discrimination in the exercise of the peremptory challenge." Id. "[G]reat deference is given the trial court when determining whether the offered explanation under the unique circumstances of a case is truly a race-neutral reason." Id. at (¶ 14). "Accordingly, we will not reverse a trial judge's factual findings on this issue unless they appear clearly erroneous or against the overwhelming weight of the evidence." Id.
¶ 24. For clarity's sake, it is appropriate to analyze the circuit court's decision as it pertained to each excluded juror. We begin with Ms. Lewis. At trial, the circuit court held that "using a strike to reach what you consider a more or a better juror due to their life experiences" was a race-neutral reason. While the prosecutor articulated multiple reasons for excluding Ms. Lewis, one such reason was that he wanted to have victims of robbery on the jury. To get to those jurors who were victims of robbery, he decided to exclude Ms. Lewis. Thus, the prosecution made a tactical decision to exclude Ms. Lewis.
¶ 25. In Walters v. State, 720 So.2d 856(¶33) (Miss.1998), our supreme court held that the State offered a race-neutral explanation for exercising a peremptory challenge when the State excluded a juror to get to the next prospective juror, who had previously been a victim of a crime. In Jackson v. State, 832 So.2d 579(¶ 5) (Miss.Ct.App.2002), this Court held that exercising a peremptory challenge for no specific reason "other than to get down the line to some other jurors that [he] wanted to keep" is not a race-neutral reason to exclude a juror. While reasons need not be persuasive or plausible, they must be reasons. Id. The case at bar is more like Walters than Jackson. Here, the prosecution did not exercise a peremptory instruction for no specific reason "other than to get down the line to some other jurors" with no further explanation. Similar to Walters, the prosecution exercised a peremptory instruction to get to jurors who had been victims of robberies.
¶ 26. Because the prosecution articulated a tactical and race-neutral reason to exclude Ms. Lewis, we cannot conclude that the circuit court's findings were clearly erroneous or against the overwhelming weight of evidence. Accordingly, we will not reverse the circuit court's finding that the prosecution did not engage in purposeful discrimination in choosing the jury.
¶ 27. Next, we turn to Mr. Jones. According to the prosecution, Mr. Jones was disinterested and inattentive during voir dire. The circuit court held that reasoning to be race-neutral. We cannot find that the circuit court's finding is clearly *816 erroneous, as "[i]nattentiveness alone has been accepted as a race-neutral explanation for the exercise of a peremptory strike." Horne v. State, 825 So.2d 627(¶ 24) (Miss.2002). Having found that the circuit court's findings of race-neutral reasons to exercise peremptory challenges against Ms. Lewis and Mr. Jones, we affirm the decision of the circuit court.

IV. THE TRIAL COURT ERRED IN DENYING [BECKUM'S] MOTION FOR RECUSAL.
¶ 28. On the day of trial, Beckum filed a motion for recusal. Beckum argued that the circuit court judge encountered Beckum when the circuit court judge worked as a public defender and again when he worked as a prosecutor. Based on those circumstances, Beckum concluded that the circuit court judge should recuse himself. The circuit court judge responded that he had defended Beckum on an unrelated charge and that he had, on previous occasions, recused himself from two other cases that were pending against Beckum. On those occasions, he recused himself because those two cases were pending when he worked in the district attorney's office.
¶ 29. However, the circuit court judge overruled Beckum's motion for recusal because he had no contact with Beckum's then present case as a prosecutor or in any other way. Beckum appeals from the circuit court judge's decision to overrule his motion for recusal.
The law surrounding the recusal of a judge in Mississippi is well settled. Under Canon 3 of the Code of Judicial Conduct, an appellate court, in deciding whether a judge should have disqualified himself from hearing a case uses an objective standard. A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality. The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards and is consistent in the application. This Court presumes that a trial judge is qualified and unbiased, and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption. When a judge is not disqualified under the constitutional or statutory provisions the decision is left up to each individual judge and is subject to review only in a case of manifest abuse of discretion.
Tubwell v. Grant, 760 So.2d 687(¶ 7) (Miss.2000) (internal quotations and citations omitted).
¶ 30. Beckum argues that he "properly rebutted the presumption of impartiality and demonstrated manifest error on the part of the trial judge." To support this general claim, Beckum says that he "demonstrated that the trial judge had previously represented [him] and had also been a member of a District Attorneys [sic] administration that had sought to prosecute [him]." Beckum also states that he "demonstrated that the trial judge had previously recused himself from previous cases" that involved Beckum.
¶ 31. Truly, Beckum demonstrated that the circuit court judge did defend him on a prior unrelated charge. That, without more, does not overcome the presumption of impartiality. We can also agree that Beckum demonstrated that the circuit court judge once worked as a member of a district attorney's office that prosecuted Beckum. Still, that does not overcome the presumption of impartiality, in and of itself. Finally, Beckum demonstrated that the circuit court judge recused himself from two cases against Beckum. The circuit court judge discussed why he *817 felt the need to recuse himself from those two cases, but not the case at hand  those two previous cases originated during his employment with the district attorneys office. This case, unlike the two prior cases against Beckum, did not originate during the circuit court judge's employment with the district attorney's office.
¶ 32. Because Beckum failed to overcome the presumption that the circuit court judge was unbiased and impartial, we cannot conclude that the circuit court abused his discretion when he overruled Beckum's motion for recusal. Accordingly, we affirm the circuit court's decision.
¶ 33. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF ROBBERY AND SENTENCE AS A HABITUAL OFFENDER TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
NOTES
[1] Mr. Jones's first name does not appear in the record.