IRVING, J.,
for the Court.
¶ 1. Larry Gooden was convicted of burglary of a storehouse. He was sentenced as a habitual offender and ordered to serve a term of seven years in the Mississippi Department of Corrections without the benefit of early release or parole. He brings this appeal and asserts the follow *324 ing assignments of error: (1) the trial court erred in denying his motion for a continuance when his witnesses were unavailable, (2) the court erred in allowing the jury to consider an exhibit not admitted into evidence, (3) the court erred in admitting forensic DNA blood evidence because the blood sample was taken from him in violation of his constitutional rights, and (4) the trial court erred in failing to grant his motions for a directed verdict and JNOV, or in the alternative, for a new trial. We reject Gooden’s contentions and affirm the judgment of the trial court.
FACTS
¶ 2. The Adams County Sheriffs Office responded to a burglary alarm at the Natchez Steam Laundry. Deputy Charles Latham arrived at the scene to investigate. During the trial, Deputy Latham testified that, upon his arrival, he witnessed a male individual put something on the ground and pull off a T-shirt. Latham further testified that he saw this gentleman move off the sidewalk and go up to the old Metro Communications Building which was next to the Natchez Steam Laundry. After a search of the surrounding area, two other policemen who had been called to assist in the investigation, found Gooden hiding under a nearby house. When found, Gooden was bleeding from three cuts on his hand. The police also found, just outside of the burglarized building, a small plastic file box containing some coins and some blood droppings on it. The file box was identified as belonging to Natchez Steam Laundry. Additionally, the police recovered a piece of glass from the interior of the burglarized building. The glass also had blood on it. The blood found on these items was matched with Gooden’s DNA. Additional facts, as needed, will be given during a discussion of the issues.
ANALYSIS OF THE ISSUES PRESENTED

1. Motion for Continuance

¶ 3. Gooden requested a continuance because of the absence of a subpoenaed witness he planned to present on his behalf and because there were other witnesses that he claimed needed to be subpoenaed. A subpoena had been issued for and served on Tina Fitzgerald. However, on the morning of the trial, Fitzgerald told Gooden she was not planning to come to court because her child was ill. Another subpoena, which had also been issued for another witness, had not been served. These subpoenas had been issued only four days prior to trial. When Gooden and his counsel arrived at the courthouse for trial, they moved for a continuance on the basis of witness unavailability. In support of the motion, counsel for Gooden advised the trial court that two new witnesses, or at least new to counsel’s knowledge, needed to be subpoenaed. Counsel argued that these witnesses would provide testimony crucial to Gooden’s defense. Defense counsel argued that the witnesses were crucial because they would support Goo-den’s claim that he had been cut prior to the arrest while doing some labor for Fitzgerald.
¶4. The trial judge stated that she would have the sheriff sent to pick up Fitzgerald because she was required to be present due to the subpoena. However, that apparently did not occur. As to the “new” witnesses, the judge reprimanded Gooden for his late disclosure of the witnesses and denied the request, citing his own delinquency as insufficient to support a continuance.
¶ 5. The granting of a continuance is a matter within the sound discretion of the judge. Johnson v. State, 631 So.2d 185, 189 (Miss.1994). Reversal is autho *325 rized when the judge abuses this discretion, and this abuse results in an injustice. See id.
¶ 6. It is abundantly clear that the absence of the testimony of these witnesses did not inure to Gooden’s detriment or cause an injustice. As the State aptly points out in its brief, testimony that Goo-den injured or cut his hand while working for Fitzgerald prior to the burglary does not add one whit to Gooden’s defense. Gooden’s blood was found on a piece of glass inside the burglarized building, as well as on the black plastic box that had been removed from the premises. Even if Gooden had been able to prove that he cut his hand prior to the burglary, that would not disprove the fact that he left blood at the scene of the crime. When Gooden came from under the building next to the laundry, his hand was bleeding. One of the officers testified that when Gooden came from under the building, he had what appeared to be a T-shirt wrapped around his hand. Apparently, this was the same T-shirt which Officer Latham had observed the individual pulling off.
¶ 7. DNA analysis determined that the blood left at the scene of the crime belonged to Gooden, and Gooden does not enlighten us on how these witnesses might have been able to provide an innocent explanation for his blood being at the scene of the burglary. Whether the blood came from an old injury or an entirely new one is totally irrelevant.
¶ 8. Additionally, as to the “new witnesses,” the judge was totally within her discretion when she refused to continue the trial because of Gooden’s own delinquency. Gooden was aware of these witnesses from the beginning and offered nothing to explain his tardy disclosure. Further, as with the cases of the subpoenaed witnesses, Gooden does not inform us as to how these witnesses’s testimony might have made a difference in the result of the trial. For the reasons stated, we can find no reason to conclude that the trial judge abused her discretion when she denied Gooden’s motion for a continuance.

2. Admission of Improper Evidence

¶ 9. Gooden claims that he was irreparably prejudiced when the trial court admitted into evidence the black box containing the coins. The box had been removed from the building, and coins, instead of tickets, were found inside of it. The black box, which was used in the laundry to keep customer tickets, was normally stored under the counter. An employee of the laundry testified that a jar filled with water and coins was kept on the counter.[1] Following the burglary, the glass was found shattered on the floor with some coins scattered on the floor.
¶ 10. Gooden argues that the coins were separate and distinct from the box and should have been subjected to a separate procedural standard of admittance before placing them into evidence for the jury’s deliberation. Gooden further argues that the jury may have been led to believe that the coins found in the box were the same coins that were scattered on the floor as a result of the shattered jar.
¶ 11. The State argues that Gooden is procedurally barred from this argument because Gooden failed to make a timely objection at the time the box, containing the coins, was admitted into evidence. The State also points out that it was not until its closing argument that defense *326 counsel approached the bench and objected to the box’s admittance.[2]
¶ 12. Based upon our review of the record, we agree that defense counsel failed to make a timely objection, resulting in the procedural bar. Notwithstanding the procedural bar, we find that Gooden’s contention is not well founded. We find it is an entirely logical inference that the coins found in the box were a portion of the coins which had been in the water jar and that the burglar used the black box to house some of the loot being taken. Therefore, when the proper predicate was established for admission of the box, nothing more was required for admission of its contents.

8. Search and Seizure

¶ 13. Gooden claims that the blood extracted from his body was done in violation of his constitutional rights because it was done without his consent. He asserts that this is a flagrantly unreasonable search and thus violates his Fourth Amendment right. The State, on the other hand, argues that the blood extraction was a direct result of Gooden’s request; therefore, the extraction did not violate his constitutional rights.
¶ 14. The reeoi'd reflects that on December 9, 1999, an order was entered setting Gooden’s trial for January 12, 2000. On January 11, 2000, defense counsel filed a motion to suppress any blood evidence because “the State had made no attempt whatsoever by scientific testing to determine that the blood found at the scene of the alleged crime was that of the Defendant.” (emphasis added). The transcript of the hearing on the motion is not contained in the record. However, on January 14, 2000, an order was entered resetting the trial of the case for February 2, 2000. On January 20, 2000, an order entitled “Order for Body Search of Suspect” was entered. In this order, the trial court recited that the order was being entered “[ujpon motion of Larry Gooden for an order allowing and directing a duly licensed physician or other authorized personnel to extract blood from Larry Goo-den.” After the foregoing recital, the trial court found that Gooden was a suspect in the laundry burglary and that:
It is proper that Larry Gooden be allowed to furnish blood samples so that they might be scientifically compared for identity or common source with certain physical evidence recovered from the crime scene, namely blood samples recovered from pieces of glass and paneling and a black plastic box at the burglarized building.
¶ 15. On the morning of the trial of this cause, Gooden accused his trial counsel of having recommended, without his consent, that Gooden’s blood be drawn and compared with the blood found at the crime scene. The trial court advised Gooden that it was her understanding that he had asked for the blood test. Gooden denied having made such a request. Following some exchanges between Gooden, his counsel and the trial court, Gooden finally admitted that he agreed to have his blood drawn. Nevertheless, Gooden still contended that he never recommended that it be done and that he did not know anything about it until he was presented with the order by his trial counsel. Gooden testified that his trial counsel acted on his own volition in requesting the blood test in order to secure a continuance.
¶ 16. The trial court concluded that Gooden had requested that his blood be drawn and compared to the blood left at the scene of the crime. In arriving at this *327 conclusion, the trial judge stated that she specifically recalled that it was Gooden’s idea, not his trial counsel’s, that a blood analysis be done. When Gooden insisted that it was all his lawyer’s doings, the trial court inquired if Gooden had ever brought to the court’s attention any dissatisfaction with his lawyer, and Gooden responded that he had. The trial judge reminded Gooden that she had responded to his one complaint by having him and his lawyer to appear before her and that during that appearance, Gooden expressed a desire to continue with his lawyer.
¶ 17. We find nothing in the record to suggest that the trial court was in error in finding that Gooden consented to and indeed requested that a DNA blood analysis be done to rule him out as a suspect in the laundry burglary. Clearly, that could not be done without a known sample of his blood. He cannot now come back, after the testing occurred, and claim that the blood was taken without his consent. This argument lacks merit.

Jp. Sufficiency of the Evidence

¶ 18. Gooden claims the court erred in denying his requests for a directed verdict and JNOV. Challenges to a trial court’s denial of a motion for a directed verdict or JNOV implicate a review of the sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993); Wetz v. State, 503 So.2d 803, 807-08 (Miss.1987). Upon review, we must give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. Garrett v. State, 549 So.2d 1325, 1331 (Miss.1989). We are authorized, even required, to reverse if the facts and inferences so considered point with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty. See id. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict is beyond our authority to disturb. Id.
¶ 19. In the case at bar, there is more than an ample amount of evidence to support the verdict of guilt. First, Gooden was identified at the scene of the crime. Secondly, a black box which had been removed from the burglarized building was found near the building in the vicinity of where Gooden was first observed by one of the officers. Blood on this box, as well as blood on a piece of glass inside of the building, was later confirmed through DNA testing as belonging to Gooden. This issue is devoid of any merit.

5. Weight of the Evidence.

¶ 20. Gooden also charges the lower court with error for denying his request for a new trial. Cases challenging a ruling on a motion for a new trial implicate a review of the weight of the evidence. The decision to grant or deny the motion reposes within the sound discretion of the trial judge. See Wetz, 503 So.2d at 812. On review, we are charged with determining whether there has been an abuse of that discretion. Absent a finding that the trial judge abused his discretion, we will not reverse. Id. Furthermore, a new trial will not be ordered unless this Court is convinced that “the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.” Groseclose v. State, 440 So.2d 297, 300 (Miss.1983).
¶ 21. Gooden asserts that no one was able to testify to seeing him inside the building. While that may be true, the *328 State had the next best thing — DNA evidence placing him at the scene. The evidence is rarely much stronger than DNA. Thus, using the abuse of discretion standard, we do not find the judge to have abused her discretion when she denied Gooden’s request for a new trial. Furthermore, allowing the verdict to stand does not sanction an unconscionable injustice. This argument lacks merit.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF BURGLARY OF A STOREHOUSE AND SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER and BRANTLEY, JJ„ CONCUR.

. The jar served as a contest offering discounts to customers who could drop the coins through the water and have them land a certain way.

. The content of this objection is off the record.