872 So.2d 735 (2004)
John W. SANDERSON, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00539-COA.
Court of Appeals of Mississippi.
May 11, 2004.
*736 John R. White, McComb, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before KING, C.J., BRIDGES, P.J., and CHANDLER, J.
BRIDGES, P.J., for the Court.
¶ 1. John W. Sanderson, Jr. was indicted by the Alcorn County grand jury on one count of sexual battery and one count of statutory rape. Sanderson was later tried and found guilty. He was sentenced to a term of life and twenty years, respectively, in custody of Mississippi Department of Corrections. It is from that conviction and sentence, he now appeals to this Court.
¶ 2. The appellant's issues are stated verbatim.

STATEMENT OF THE ISSUES
I. THE JURY VERDICT IN THIS CASE WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. TRACY JOHNSON'S TESTIMONY REGARDING THE ALLEGED ASSAULT CHANGED FOLLOWING NUMEROUS UNSUPERVISED VISITATIONS BY DEBBIE JOHNSON.
III. THE TRIAL COURT ERRED IN ADMITTING HEARSAY STATEMENTS PURSUANT TO MISSISSIPPI RULES OF EVIDENCE 803(25) SINCE ADMITTED STATEMENTS WERE NOT SPONTANEOUS AND DID NOT HAVE SUFFICIENT INDICIA OF RELIABILITY.

FACTS
¶ 3. On February 9, 2001, the victim, *737 Lulu[1], a ten year old, was residing in Alcorn County with her mother, Annie Sue; her mother's boyfriend, John W. Sanderson, Jr., the defendant; her brother, Elmo.; her half sister, Betty Lou; and her step brother, Kermit. During the night of February 9th or early morning hours of February 10, 2001, Alcorn County police officers were called to the Sanderson home. The call, concerning a domestic dispute, was made by the victim's mother from a neighbor's home. Alcorn County police officers responded to the call and later transported Annie Sue and her children, Elmo, Betty Lou and Lulu to the sheriff's office.
¶ 4. The sheriff's office summoned Debbie Gann, a social worker from the Department of Human Services (DHS). According to the record, Annie Sue informed police and Gann that she and Sanderson had been in a fight and that she had packed her clothes to leave. Annie Sue stated that Sanderson told her she could not leave unless she had sex with his fifteen-year-old son, Kermit, and he (Sanderson) had sex with Annie Sue's ten-year-old daughter, Lulu. Annie Sue said that she did have sex with Kermit and that Sanderson touched her daughter, Lulu, in her vagina with his tongue and "put his penis in her." She also admitted that she was in the room with Sanderson and her daughter when the act occurred.[2] Annie Sue and Lulu were immediately transported to Magnolia Hospital emergency room where an examination and rape kit was performed on Lulu by medical personnel including Dr. Glen Bennett and nurse Tila Johnson. Dr. Bennett's report stated that he saw no evidence of sexual abuse and that Lulu had no trauma to the vaginal area.
¶ 5. Lulu, Elmo, and Betty Lou were taken into the custody of the Department of Human Services on February 10, 2001 and were later placed in foster care. During the investigation of the case, Annie Sue was allowed unlimited, unsupervised visitation with Lulu at the DHS offices. Over the next several months and during the time Annie Sue was making unsupervised visits to Lulu, Lulu began adding details of the assault which were inconsistent with her initial statements.
¶ 6. On approximately April 19, 2001, Gann transported Lulu to the Mantachie Clinic for an evaluation by Dr. Linda Chidester.
¶ 7. John Sanderson, Jr., was charged with one count of sexual assault and one count of statutory rape on January 8, 2002. During trial, which took place on February 10-13, 2003, Lulu, who was twelve years old at the time of trial, testified that on the date and place in question, she saw Sanderson, "put his private in my mama's private." Sanderson then turned his attention to Lulu, who "went under the bed" and then tried "to go through the door." Sanderson slapped both Annie Sue and Lulu. Lulu also testified that Sanderson "put his tongue in my private and licked it." He then put his "private" into her "private," causing her pain.
¶ 8. Betty Lou, who is two years younger than Lulu, testified at the trial that she saw Lulu, Annie Sue and Sanderson in Annie Sue's bedroom that afternoon. She also stated that at one point she heard Lulu "screaming and crying" and that Lulu seemed to be "upset" for the rest of the day and night.
*738 ¶ 9. Debbie Gann, the social worker and investigator for DHS, testified that she first interviewed Lulu who was "a small little ten-year old girl" who "had a speech problem ... and ... hearing aids." Gann testified that Lulu told her that Sanderson "had pulled her pants down, that he had tried to hurt her, that he touched her with his month[mouth] and with his tongue and that he touched her with his penis." Subsequently, Annie Sue confirmed Lulu's story, and added the details concerning Kermit. Gann stated that "during the next two months that the children were in [the] custody" of DHS, Lulu "continued to tell her the same thing." Over the course of these weeks, Lulu "had gotten to know" Gann and "was a little more comfortable" talking to her. Because of Lulu's persistence about incident, Gann "made an appointment with Dr. Linda Chidester for a sexual abuse exam" for Lulu.
¶ 10. Dr. Chidester, accepted by the court as an expert in the field of family medicine with specialized knowledge and training in the field of child sexual abuse, had interviewed Lulu and performed a physical examination on her. Lulu told Dr. Chidester that Sanderson "touched her vaginal area" with what "was between his legs," and that "[i]t felt bad and she cried." Dr. Chidester observed that Lulu's hymen was "completely torn all the way through at five o'clock." Her vaginal opening was approximately fifteen millimeters, fifty percent larger than the average for her age. When she was asked whether she had an opinion based on reasonable medical certainty that Lulu had been sexually penetrated, Dr Chidester answered, "Yes, I do." Asked to give that opinion, she testified, "that [Lula] was vaginally penetrated. And based on her physical exam, there is no question that she was vaginally penetrated. Based on her history, it was the result of her being molested."
¶ 11. On cross-examination, Dr. Chidester testified that she believed Lulu had been sexually abused although she could not state the time frame for any alleged abuse. Additionally, Dr. Chidester admitted that she failed to properly fill out her forms regarding the examination. She could state only that the penetration did not occur within approximately twentyfour hours of the date of the exam. Dr. Chidester's inventory of behaviors, associated with sexual abuse and physical examination, indicated no evidence of sexual abuse with the exception of what she perceived to be a slight tear in the victim's hymen. Additionally, approximately ninety-six percent of patients with questionnaire results similar to Lulu's would be confirmed non-abused.[3]
¶ 12. Missy Jackson, a social worker, conducted a forensic interview of Lulu on June 28, 2001. Jackson recounted this interview at trial as follows, in pertinent part:
When asked why she was taken out of her home, she bowed her head and softly stated, `one night in mom's room, dad hurt me.' When asked who she meant when she said dad, she stated John. When asked how John hurt her, she stated, `daddy pulled my pants down.' When asked to tell me more, she stated, `he told me to pull my pants down, but he pulled them down. Mom held my *739 hand while my dad pulled my pants down. He kept hurting me.
* * * *
She was sobbing, very distraught. At one point in the interview I had to stop the questioning ....
¶ 13. Ana Paunovic, who was accepted by the court as an expert in the field of molecular biology and forensic DNA analysis, also testified at the trial. She testified that, in her expert opinion, the genetic profile of the sperm extracted from Lulu's panties was "consistent with the suspect as the major contributor."
¶ 14. Additionally, Sanderson and his son, Kermit, both testified that the story alleged by Annie Sue regarding the events of February 9, 2001, was false. Sanderson testified that he did not engage in any sexual conduct with Lulu. Kermit testified that he was not forced and did not have sexual intercourse with Annie Sue.
¶ 15. Following the trial, Sanderson was found guilty on both counts of the indictment and sentenced to life and twenty years in the Department of Corrections.

ANALYSIS
I. THE JURY VERDICT IN THIS CASE WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 16. Sanderson argues that the jury's verdict was against the overwhelming weight of the evidence and he believes that there would be a serious miscarriage of justice if the verdicts were allowed to stand.
¶ 17. The Mississippi Supreme Court has held that "[t]he jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed." McClain v. State, 625 So.2d 774, 781 (Miss. 1993). This Court will reverse only for an abuse of discretion and, on review, will accept as true all evidence favorable to the State. Id. "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Collins v. State, 757 So.2d 335, 337(¶ 5) (Miss.Ct.App.2000) (quoting Dudley v. State, 719 So.2d 180, 182 (¶ 8) (Miss.1998)).
¶ 18. In the present case, the jury heard the witnesses and the evidence and arguments presented by both the State and the defense. The question of Sanderson's guilt was for the jury to decide. The jury's decision to believe the State's evidence and witnesses was well within its discretion. Moreover, the jury was within its power to weigh the evidence and the credibility of the witnesses's testimony and to convict Sanderson. The jury verdict was not so contrary to the overwhelming weight of the evidence that, to allow it to stand, would have been to promote an unconscionable injustice.
II. TRACY JOHNSON'S TESTIMONY REGARDING THE ALLEGED ASSAULT CHANGED FOLLOWING NUMEROUS UNSUPERVISED VISITATIONS BY DEBBIE JOHNSON.
¶ 19. This statement does not raise a question for appellate review.
III. THE TRIAL COURT ERRED IN ADMITTING HEARSAY STATEMENTS PURSUANT TO MISSISSIPPI RULES OF EVIDENCE 803(25) SINCE ADMITTED STATEMENTS WERE NOT SPONTANEOUS AND DID NOT HAVE SUFFICIENT INDICIA OF RELIABILITY.
¶ 20. Sanderson also argues that the trial court erred in admitting hearsay statements pursuant to Mississippi Rules *740 of Evidence 803(25) since admitted statements were not spontaneous. While he concedes that the trial court did conduct a hearing outside the presence of the jury, he claims that the trial court erred in finding that sufficient indicia of reliability was present.
¶ 21. With regards to the admission or exclusion of evidence, the law in Mississippi is well established that a trial judge has discretion to either accept or reject evidence offered. Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936(¶ 7) (Miss.2002); see Austin v. State, 784 So.2d 186, 193 (¶ 23) (Miss.2001). "That discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will only be had when an abuse of discretion results in prejudice to the accused." Austin, 784 So.2d at 193-94 (¶ 23).
¶ 22. Mississippi Rule of Evidence 803(25), which is an exception to the hearsay rule and is called the tender years exception, provides:
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
¶ 23. The Rule's comment lists several factors that the trial court should examine to determine if there is sufficient indicia of reliability. The factors include:
(1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.
See also Idaho v. Wright, 497 U.S. 805, 821-22, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). The comment for Rule 803(25) also states that "a finding that there is a substantial indicia of reliability should be made on the record."
¶ 24. The tender years exception applies to this case because, although the minor was twelve years of age at the time of trial, she was ten years of age at the time the incident occurred. The Mississippi Supreme Court has stated that "there is a rebuttable presumption that a child under the age of twelve is of tender years." Veasley v. State, 735 So.2d 432, 436(¶ 16) (Miss.1999). The trial judge determined that, based on his understanding of her age, the apparent state of her social development, her demeanor, insofar as the witnesses who have appeared and testified are concerned, Lulu certainly qualified under the tender years exception.
¶ 25. In the case sub judice, the trial judge found the testimony admissible under Rule 803(25). The judge conducted the required hearing, outside the presence of the jury. He accepted testimony and made extensive findings as to the factors necessary to ascertain the veracity of the declarant's testimony. The judge found that there was no motive to lie, that the *741 witnesses's character was not in dispute, that the statements were spontaneous and not coerced, and that the witnesses's testimony was credible.
¶ 26. We find that the trial judge followed the proper procedure required by Rule 803(25) of the Mississippi Rules of Evidence. Therefore, the trial judge did not abuse his discretion in allowing the testimony. We find this assignment of error is without merit.
¶ 27. THE JUDGMENT OF THE ALCORN CIRCUIT COURT OF CONVICTION OF COUNT I SEXUAL BATTERY AND SENTENCE OF LIFE; COUNT II STATUTORY RAPE AND SENTENCE OF TWENTY YEARS TO RUN CONSECUTIVELY TO SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND ORDER TO REGISTER AS A SEX OFFENDER IN THE EVENT OF HIS RELEASE IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., CONCURS IN RESULT ONLY.
NOTES
[1] Because this case involved a minor, fictitious names were used in this opinion.
[2] With respect to this incident, Annie Sue pled guilty to charges of accessory before the fact to sexual battery and statutory rape.
[3] The questionnaire contained a SASA abreve score which is a sexual abuse inventory. In a study done, a researcher found that there were ten behaviors that seemed to be associated with sexual abuse. For the results, if one answers "yes" to three or less, ninety-six percent of the time, that person is confirmed not abused. If one answers "yes" to three or more, seventy-seven percent of the time, that person is confirmed abused. In the present case, there was only one marked "yes."