BARNES, J.,
for the Court.
¶ 1. A Madison County Circuit Court jury convicted Willie Lee Ware, Sr. of the crime of depraved heart murder of his mother, Virillion Anderson, and the trial judge sentenced him to life imprisonment. Ware’s post-trial motion for a new trial or, in the alternative, judgment notwithstanding the verdict was denied, and he perfected ■ this appeal in which he alleges the insufficiency of the evidence. Finding no error, we affirm.
FACTS
¶'2. The facts according to the State’s case are as follows. Katrina Day testified that at approximately 5:00 a.m. on May 7, 2001, she received a phone call for assistance from her neighbor, Willie E. Ware, Sr., who said that he needed to take his mother to the hospital but was having difficulty getting her into the car. When Day arrived at the home, Ware’s mother, Virillion Anderson, was sitting on the ground propped against the rear of Ware’s car. Day testified that Ware told her that he had awakened to find his mother lying in bed in a pool of blood. He speculated that she fell out of bed and injured herself and "then climbed back into bed.
¶ 3. Day and Ware struggled with the eighty-seven-year-old Anderson but were unable to lift her into the car. Day testified that she was upset and frightened by the condition of Anderson whom she described as “cold and real heavy and stiff like she had no life in her body.” Day testified that at one point during the struggle she was so disturbed by the way Anderson’s head was moving about that she suddenly let go of the body. Ware, noticing her reaction, responded by saying, “Mama not dead, Mamá not dead.” After *752 a few more failed attempts at getting Anderson into the car, Day telephoned for additional help.
¶ 4. Another of Ware’s neighbors, James Williams, and his teenaged son responded to Day’s call. Williams testified that when they were finally able to get Anderson situated in the car, Ware asked Williams to accompany him to St. Dominic Hospital in Jackson. Williams testified that he convinced Ware that his mother was in need of immediate medical attention and should be taken to the nearest hospital, which was in Canton, where they all resided. Ware agreed even though he had earlier expressed some trepidation about the care his mother would receive at the Canton hospital. Williams did not ride to the hospital in the car with Ware but followed in his own vehicle after he washed off Anderson’s blood. Anderson was declared dead on arrival at the Canton hospital.
¶ 5. The hospital coroner immediately suspected foul play in Anderson’s death and summoned Madison County Deputy Sheriff Eddie Clark to the hospital. Clark testified that the coroner was particularly suspicious of wounds to Anderson’s head and arms. Clark questioned Ware about what happened to Anderson, and Ware repeated his account of having found his mother lying in bed in a pool of blood. A short time later, Clark followed Ware from the hospital to the house where Ware gave his permission for a search of the house.
¶ 6. Deputy Clark testified that Anderson’s bedroom was the first room one entered when stepping into the house. Right next to Anderson’s bedroom was Ware’s bedroom; only a wall separated the two rooms. One of the first things Clark noticed upon entering Anderson’s bedroom was the absence of any linen on the bed and the dampness of the floor which appeared to have been mopped. Noticeably absent was any blood on the bed itself. When Ware was questioned about the bed linen and the floor, he said that he had used a sheet from the bed to drag his mother from the house to the car, and that he had mopped the floor because he was afraid that the blood would not come up if it was allowed to dry. Ware also said that he had cleaned himself up and washed the clothes that he had been wearing before he took Anderson to the hospital.
¶ 7. Both Day and Williams testified that Ware transported Anderson to the hospital in a black or dark colored Cadillac or Oldsmobile. Deputy Clark testified that Ware identified “a little red car” as the vehicle used to transport Anderson, and he consented to a search of the car. When Clark opened the trunk there was black garbage bag containing a quilt, a pillow case, and men’s boxer shorts, all of which were wet, and a “regular house broom” with a broken handle. At that point, Ware was taken in for questioning. Throughout the interrogation, Ware maintained that Anderson had apparently fallen out of bed and injured herself then crawled back into bed.
¶ 8. Following a preliminary autopsy ruling from Dr. Steven Hayne that Anderson’s death was the result of homicide, Clark took the broken broom to Dr. Steven Hayne who determined that the broom was consistent with the type of instrument that caused the injuries to Anderson. Dr. Hayne testified in detail as to the extent of Anderson’s injuries. He found evidence of traumatic injury to nineteen different areas of her body. To her forehead alone, he testified about a quarter of an inch abrasion over the mid-left side of the forehead; a contusion measuring approximately five inches coursing from the midline of the forehead to the left side of the forehead; and a laceration measuring approximately three and a quarter inches located diagonally across *753 the right side of the forehead which left a gaping wound. Additionally, Dr. Hayne testified that the tissue around both of Anderson’s eyes was bruised as a result of blows to the face.
¶ 9. Dr. Hayne further testified that there was a large bruise over the left side of Anderson’s scalp extending from well in front of the left ear to well behind the left ear that measured approximately seven inches in length. It was Dr. Hayne’s expert opinion that Anderson’s injuries resulted from multiple blows to the body and not a single blow. He found that some of the injuries were consistent with defensive posturing injuries by a conscious person trying to ward off injury to the face, neck and chest. Those injuries were located on Anderson’s upper extremities and involved the hands and forearms and included both bruises as well as cuts of the skin. There was a large bruise on the upper left side of Anderson’s back near her left shoulder that measured approximately ten and a half inches in length. He concluded that all of Anderson’s injuries were suffered at or about the same time and in close proximity to her death. When asked about the likelihood of Anderson’s injuries having been caused by a fall to the floor, Dr. Hayne responded that he could “probably reasonably exclude” that as a cause. Dr. Hayne explained that the only way he could reasonably conceive of a person suffering such injuries in a fall would be if she fell into a cement mixer or something similar.
¶ 10. It was Dr. Hayne’s opinion that the manner of Anderson’s death was homicide, but the cause of her death was a combination of matters involving cardiovascular disease, hypertensive heart disease, and severe coronary artery disease, with superimposed blunt force trauma resulting in sudden cardiac death.
¶ 11. Ware rested without putting on a defense.
ISSUE AND ANALYSIS
1. Was the evidence insufficient to show criminal agency ?
¶ 12. Ware argues that his is a circumstantial evidence case and as such, criminal agency must be proved beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with his innocence. He cites Steele v. State, 544 So.2d 802 (Miss.1989), as authority for his argument that the evidence presented at trial does not exclude the reasonable hypothesis that the injury was an accident, the exact cause of which remains unknown. Ware contends that the conviction is faulty because the State’s expert did not exclude the possibility that Anderson sustained her injuries from multiple falls against the bed, her wheelchair and/or the rail of her portable commode.
¶ 13. The most obvious distinction between the case at bar and Steele is that the evidence of criminal agency in the ease at bar stands uncontradicted. Dr. Hayne’s testimony that Anderson’s death was the result of trauma superimposed on underlying disease leading to sudden cardiac death is not disputed in the record.
¶ 14. There is no hypothesis consistent with innocence before this Court. The manner of Anderson’s death — homicide—is not contested by any evidence contained in the record. Ware was in possession of an object, the broom, that was consistent with the type of instrument that was used to inflict the injuries to Anderson’s bruised and battered body. There is no support at all in the record for Ware’s contention that his mother’s injuries could have been the result of multiple falls. The only suggestion that a fall was the cause of Anderson’s injuries was made by Ware while not un *754 der oath and even he only made mention of the possibility of a single fall sometime during the night or early morning hours on the day of Anderson’s death. Proof by the State that the injuries were inflicted at or around the time of death goes against any claim of multiple falls.
¶ 15. The Mississippi Supreme Court summarized the standard of review for challenges to the sufficiency of the evidence in criminal cases in McClain v. State, 625 So.2d 774, 778 (Miss.1993), and held that the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with guilt must be accepted as true, and the prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Reversal is only authorized where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. When this Court applies this standard of review to the evidence presented at Ware’s trial, we are left with the undeniable conclusion that the jury had no basis on which to find that Ware was not guilty.
2. Was the evidence sufficient to show that Ware committed the homicide?
¶ 16. Ware contends that even if criminal agency had been proved, there was insufficient evidence for a reasonable jury to conclude beyond a reasonable doubt and to the exclusion of any reasonable hypothesis to the contrary that Ware committed the crime. He alleges that the extent of the State’s evidence pointing to Ware was that he was apparently alone in the house with Anderson when she sustained her injuries and that he behaved “suspiciously” thereafter.
¶ 17. As stated previously in this opinion, there was no reasonable hypothesis presented at trial to contradict Ware’s having committed the crime. The fact that Ware was home alone with his mother at the time she sustained her injuries was not the extent of the State’s evidence. The evidence was that Anderson’s injuries resulted from a severe beating administered to her at a time when she was alone with Ware, and that Ware was in possession of an object, the broom, consistent with the type of instrument used to inflict that beating, at a time and in a place where other evidence from the crime scene was also discovered. On the basis of this Court’s standard of review, reversal is not authorized.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF DEPRAVED HEART MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.