IRVING, J.,
for the Court.
¶ 1. James Allen Gibson, Jr. was convicted by a Harrison County jury of murdering his wife, Cynthia Gibson. He was sentenced to a term of life imprisonment in the custody of the Mississippi Department of Corrections. Feeling aggrieved by this verdict and sentence, he appeals and asserts the following issues: (1) whether his trial counsel provided ineffective assistance, (2) whether the circuit court erred in admission of certain testimony and multiple evidentiary rulings, (3) whether the circuit court erred in overruling his motion *187 for a directed verdict and not granting his peremptory instruction, (4) whether the circuit court erred in giving a certain jury instruction, (5) whether the circuit court erred in not granting a mistrial and/or new trial upon learning (a) that a juror had withheld vital information during voir dire, and (b) that the jury was deliberating, not based on the evidence adduced at trial, but on extraneous facts and evidence having no relation to the case at hand, and (6) whether the circuit court erred in not granting Gibson’s motion for a new trial because the verdict was against the overwhelming weight of the evidence.
¶ 2. Ascertaining no error, we affirm.
FACTS
¶ 3. On the night before her death on February 24, 2001, Cynthia Gibson was staying with a friend, Glenda “Mickey” Lindsey. On this night, Cynthia received several phone calls from her husband, James Gibson, Jr. As a result of these calls, Cynthia agreed to meet Gibson at a Jitney Jungle grocery store the next morning. The purpose of this meeting was for Cynthia to get her mail, specifically a Social Security check. The next morning when Cynthia asked Glenda to take her to the Jitney Jungle, Glenda refused. However, Glenda did take Cynthia to the home of a woman known as “Mee Maw.”[1] After going inside of Mee Maw’s house, Cynthia waved to Glenda and told her everything was all right and that she would see her later.
¶ 4. On the day of Cynthia’s death, Gibson asked his father, James Gibson, Sr., to take him to Gulfport to the old house where Gibson grew up. Apparently, the old house is located next to Mee Maw’s house. Gibson was dressed in blue jeans, shirt and tennis shoes. After James Gibson, Sr., dropped Gibson off, he did not see Gibson again until about two or three o’clock the next morning. Around 3:30 p.m. or 4:00 p.m. on February 24, 2001, Gibson went to the home of Joseph Edward Bosarge, the fiancé of Gibson’s sister, Samantha Lewis.[2] Gibson told Bosarge that Gibson had “killed the b — h.” Gibson also told Bosarge that the killing occurred at the old house. Later that evening Bosarge told Lewis what Gibson had told him. Lewis then went to her father’s house. After reaching her father’s house in Saucier, Lewis called the police. After the police were alerted, Gibson, Sr. and his daughters went to the old house and waited outside of the old house for the police to arrive. The police found Cynthia’s body on the floor and determined that her death was caused by blood loss resulting from her throat being cut. Additional facts will be disclosed during our discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Ineffective Assistance of Counsel

¶ 5. Gibson asserts the following nine instances in which his trial counsel was allegedly ineffective: (1) trial counsel failed to object to hearsay, (2) trial counsel failed to object to speculation, (3) trial counsel failed to object to improper medical testimony, (4) trial counsel failed to object to leading questions, (5) trial counsel failed to object to other irrelevant and/or improper evidence, (6) trial counsel improperly solicited hearsay or other objectionable evidence, (7) trial counsel failed *188 to request a mistrial or other relief, (9) trial counsel failed to request a manslaughter instruction, (9) trial counsel failed to object to implicit remarks regarding Gibson’s decision to not testify.
Although Gibson asserts these instances which he contends resulted in his being ineffectively represented, he cites no authority holding that such lapses in trial counsel’s performance amount to ineffective representation. Moreover, Gibson has embellished what occurred during the course of his trial and made broad accusations which really have no solid underpinning in the record. Nevertheless, we consider his allegations in the summary fashion in which he presented them.
¶ 6. To make a successful claim of ineffective assistance of counsel, the defendant must meet the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Strickland explains the test as follows:
First the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced his defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.
Id. at 687, 104 S.Ct. 2052. The Strickland court further teaches that “[t]he constitution does not guarantee a right to errorless counsel” and declares:
[A] court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” See Michel v. Louisiana, supra, 350 U.S., at 101, 76 S.Ct., at 164. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.
Id. at 686, 689-90, 104 S.Ct. 2052
¶ 7. In the case at bar, Gibson must overcome the strong presumption that his trial counsel’s decisions were a result of sound trial strategy and fall within a reasonable range' of acceptable conduct. While Gibson’s trial counsel’s performance might have been less than perfect, we find nothing in the record that proves that Gibson’s trial counsel’s performance was not in the “wide range of reasonable professional assistance.”
¶ 8. To satisfy the second prong of the test, “the defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. We find that even if Gibson’s trial counsel was deficient, there is no reasonable probability that the proceeding would have been different given the plethora of evidence against him, including his confession that he “killed the b — h.”

(2) Admission of Testimony and Evi-dentiary Rulings

¶ 9. Gibson argues that the circuit judge erred in many of his rulings, which deprived Gibson of a fair trial. He cites three instances in which the trial judge allegedly erred. First, he contends that the trial court committed error in ruling that a statement testified to by various witnesses was not hearsay because it was offered for the truth of the contents of the *189 statement. Second, he contends that the trial court permitted irrelevant testimony. The third and last instance in which Gibson argues trial error occurred involves the admission of a videotape. As to the videotape, Gibson argues its admission was error because it was cumulative and its probative value was outweighed by the risk of undue prejudice.
¶ 10. While Gibson alleges that the trial court erred in its evidentiary rulings, however, as was the case with the leveling of the ineffective assistance of counsel claim, he fails to show how he was prejudiced by any of these rulings, assuming arguendo that the rulings were erroneous. The specific rulings involved the admission of Glenda “Mickey” Lindsey’s testimony about taking Cynthia to Mee Maw’s house, the admission of Samantha Lewis’s testimony about what she did and how she reacted to what Bosarge told her concerning his conversation with Gibson, and the admission of the videotape of the crime scene.
¶ 11. The admission of evidence is within the sound discretion of the trial court, and its decision regarding the admission of evidence will not be reversed on appeal absent an abuse of discretion. Parker v. State, 606 So.2d 1132, 1136 (Miss.1992) (quoting Johnston v. State, 567 So.2d 237, 238 (Miss.1990)). We find no abuse of authority here. Therefore, this issue has no merit.

(3) Motion for a Direct Verdict and for a New Trial

¶ 12. Gibson next argues that the trial court erred in failing to grant his motion for a directed verdict, peremptory instruction, and motion for a new trial. Gibson maintains that the State failed to offer any credible evidence that he committed the crime charged with deliberate design or malice aforethought.
¶ 13. The standard of review for a denial of a directed verdict and peremptory instruction is identical. Hawthorne v. State, 835 So.2d 14, 21(¶31) (Miss.2003) (citing Coleman v. State, 697 So.2d 777, 787 (Miss.1997)). A motion for a directed verdict and request for a peremptory instruction challenge the legal sufficiency of the evidence. Id. (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)). “On the issue of legal sufficiency, reversal can only occur when evidence of one or more of the elements of the charged offense is such that ‘reasonable and fair-minded jurors could only find the accused not guilty.’ ” Id. (citing Wets v. State, 503 So.2d 803, 808 (Miss.1987)).
¶ 14. Bosarge testified that Gibson told him that Gibson had “killed the b — h.” Bosarge also testified that Gibson said that he had done it at the old house. Angela Byrant, Gibson’s sister, testified that Gibson told her that he had killed his wife. We find that the State offered ample evidence in support of Gibson’s conviction and that the jury was justified in finding Gibson guilty of murder.
¶ 15. We now address Gibson’s contention that he should have been granted a new trial.
In reviewing the decision of the trial court on a motion for a new trial, [an appellate court] views all of the evidence in the light most consistent with the jury verdict. A motion for a new trial addresses the weight of the evidence and should only be granted to prevent an unconscionable injustice.
Wall v. State, 820 So.2d 758, 759 (¶5) (Miss.Ct.App.2002) (quoting Daniels v. State, 742 So.2d 1140, 1143(¶11) (Miss.1999)).
¶ 16. Based on the evidence which we have already recounted in this opinion, we *190 are not convinced that , allowing the jury’s verdict to stand will sanction an unconscionable injustice. Therefore, we find no abuse of the trial court’s discretion in .denying Gibson’s motion for a new trial.

(k) Jury Instruction S-2

¶ 17. Gibson argues that' the circuit'court erred in giving the jury written instruction S-2 which states, “The Court instructs the Jury that if wounds are inflicted upon a person with-a deadly weapon in a manner calculated to destroy life then intent may be inferred from the use of the weapon.” Gibson, citing Tran v. State, 681 So.2d 514, 517 (Miss.1996), alleges that the instruction runs contrary to Mississippi law which provides that deliberate design cannot be presumed from the unlawful and deliberate use of a deadly weapon where the evidence adduced at trial established the circumstances surrounding the use of the weapon.
¶ 18. The instruction given in Tran is distinguishable from S-2, the instruction given in our case. In Tran, the jury was instructed that “[djeliberate design may be presumed from the unlawful and deliberate use of a deadly weapon.” Id. The jury instruction in the instant case provides in pertinent part that “intent may be inferred from the use of the weapon.”
¶ 19. There is a significant difference in presuming a fact and inferring a fact from the evidence presented. “Presume” means “to take for granted as being true in the absence of proof.” THE AMERICAN HERITAGE COLLEGE DICTIONARY 1083 (3rd ed.1993). “Infer” means “to conclude from evidence or premises.” Id. at 696. Therefore, we find that instruction S-2 does not run afoul of the condemned instruction in Tran, but even if it did, we would, on the evidence 'of this case, hold the error harmless, for based on Gibson’s statements to .Bosarge and Gibson’s sister, Angela, there is no doubt that the State proved that Gibson committed the murder with deliberate design.

(5) Denial of Mistrial

 ¶ 20. Gibson contends that the circuit court erred in not granting a mistrial and/or new trial upon learning that (a) a juror had withheld vital information during voir dire, and (b) the jury was deliberating, not based on the evidence adduced at trial, but on extraneous facts and evidence having no relation to the case at hand. During the course of deliberations, a juror, Diane Oldham, sent out a note stating that another juror, Terry Adkins, had been in the same situation, that she had been with a man who she had sex with and that the man cut her throat afterwards. Nobody knew who Terry Adkins-was, but since there was a juror named Terry Smith, it appears from the record that everyone assumed that Terry Smith and Terry Adkins were one and the same person. We accept the assumption that Smith and Adkins are one and the same since nothing in the record reveals otherwise.
¶ 21. Gibson contends that juror Terry Smith/Terry Adkins refused to respond to the following question during voir dire: “Anyone been a victim of any kind of crime, them or a family member?” After defense counsel learned from the juror’s note that Terry Smith/Terry Adkins had been a victim of what may be presumed to be a crime, rather than asking the court to interrogate Terry Smith/Terry Adkins to ascertain the nature of the act perpetrated against her and to determine whether she had understood the voir-dire question, defense counsel chose to move for a mistrial. Based on only the note which came from juror, Diane Oldham, and not juror Terry Smith, we are unwilling to hold that Terry Smith/Terry Adkins failed to properly respond to the voir-dire question. More *191 over, assuming that the incident reported by Oldham did in fact occur and that juror Smith related this personal experience to other jurors during jury deliberation, it is an improper characterization to call what occurred a discussion of extraneous evidence. Therefore, we find this issue to be without merit.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.

. Mee Maw’s house’s is supposedly next to the old house where Gibson was raised. However, the record is not clear as to who Mee Maw is.

. Bosarge's grandmother lives next door to the house in which Gibson grew up and may have been known to some as Mee Maw.