# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00690-COA

**LYNCOYA SHARROD RATCLIFF A/K/A CORY RATCLIFF A/K/A LYNCOYA SHARRAD RATCLIFF**                                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                                              APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/06/2022 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ZAKIA BUTLER CHAMBERLAIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | LIN CARTER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/05/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1. During a routine traffic stop, a search by law enforcement found a recently stolen pistol. While the driver denied possession, his backpack held ammunition matching it. He was ultimately convicted of possession of a stolen firearm and possession of a weapon by a felon. He now appeals, claiming the evidence was insufficient to prove he knowingly possessed the pistol and that the conviction was against the weight of the evidence.

¶2. Finding no error, we affirm.

## FACTS

¶3. One night, Lyncoya Ratcliff was driving home from a party. He was pulled over by a Hattiesburg police officer for driving with a broken headlight.

¶4. Ratcliff told the officer the Escalade he was driving belonged to the passenger. Ratcliff did not have a valid driver's license but explained that he was driving because the passenger was intoxicated.

¶5. While the officer was collecting information from Ratcliff and the passenger, another officer arrived as backup. As he approached the vehicle on the passenger side, he heard whispering and saw "several sort of movements" inside the SUV. The first officer then returned to the vehicle, and the other officer told him what he observed.

¶6. When asked whether any guns were in the vehicle, Ratcliff and the passenger remained silent. For safety reasons, the officers then asked Ratcliff to step out of the SUV. After the vehicle's door was opened, the officers observed in plain view a small bag of marijuana on the driver's side floor. This discovery prompted a search of the vehicle.

¶7. In the pocket behind the passenger seat, an officer discovered a silver .22-caliber revolver with the handle removed. In the back seat, the officers found a black bag that contained two Sig Sauer .45-caliber magazines and .22-caliber ammunition. The bag also contained prescription drugs and a woman's purse, along with other items such as an I.D. and fake eyelashes. The officers also discovered a black puppy and a bag of dog food.

¶8. Ratcliff denied knowledge of the revolver. But he admitted the black bag belonged to him.

¶9. The officers conducted a second search. They discovered a Sig Sauer .45-caliber

2

pistol between the passenger seat and the center console. The officers ran the serial number and discovered it was stolen—reported missing from the owner's truck just shy of a month prior. Ratcliff was then placed under arrest.

## PROCEDURAL HISTORY

¶10. Ratcliff was indicted for possession of a stolen firearm and possession of a weapon by a felon. At trial, the jury heard testimony from the two officers who conducted the stop and viewed their body-camera footage. Ratcliff took the stand in his own defense.

¶11. The officer who arrived as backup testified that when he approached the vehicle, he believed that Ratcliff was unaware of his presence. The officer said that he heard the defendant whispering to the passenger, "I've got dope on me." Then he heard Ratcliff repeatedly say "hand me that" while he watched the officer in the rearview mirror.

¶12. The officer further testified that after the initial search, he had suspicions another pistol may have been in the vehicle because the magazines found in the bag did not match the revolver found in the seatback. At that point, the officer went back to the Escalade, where he discovered the Sig Sauer .45 between the passenger seat and the center console.

¶13. Next, the jury heard from Ratcliff. He testified he had been drinking and visiting with friends at the Pineview Apartments prior to the traffic stop. Once the passenger arrived at the apartment, Ratcliff asked if he could put his bag in his SUV. During the party, the passenger and others made several trips to the liquor store in the Escalade.

¶14. Ratcliff further testified that he and the passenger left the apartment around 9:00 p.m. They stopped at a liquor store along the way, at which point Ratcliff asked to drive.

3

According to him, he started driving shortly before the officer pulled them over.

¶15.    On the stand, Ratcliff continued to deny knowledge of any weapons in the SUV, but he did acknowledge ownership of the black bag.  He also claimed ownership of the prescription pills and woman's purse found in the backpack, but he testified that he had no knowledge of where the Sig Sauer magazines came from or how they ended up in his bag.

¶16.    The body-camera footage from the stop was admitted at trial and played for the jury. The jury heard an officer ask Ratcliff and the passenger what they were talking about when he overheard whispering.  Ratcliff stated that he was talking to the puppy during that time; however, the footage showed a different version of the story.  Despite Ratcliff's testimony, the jury viewed the passenger tell the officers that Ratcliff was referring to the pistol when he said, "[H]and me that, hand me that."

¶17.    Ratcliff was found guilty of possession of a stolen firearm (Count I) and possession of a weapon by a felon (Count II).  He was sentenced to serve five years for Count I and ten years for Count II, with the sentences set to run concurrently.  Ratcliff then moved for judgment notwithstanding the verdict.  The trial court denied the motion, and the defendant appealed.

## STANDARD OF REVIEW

¶18.    "This Court reviews a sufficiency-of-the-evidence challenge de novo."  *Holder v. State*, 348 So. 3d 370, 373 (¶7) (Miss. Ct. App. 2022).  "When reviewing challenges to the sufficiency of the evidence, we view all evidence in the light most favorable to the State." *Thomas v. State*, 277 So. 3d 532, 535 (¶11) (Miss. 2019) (citing *Cotton v. State*, 144 So. 3d

137, 142 (Miss. 2014)).  The critical inquiry is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (quoting *Cotton*, 144 So. 3d at 142 (¶8)).

¶19.    "In determining . . . whether the weight of the evidence supports a verdict," this Court "will only disturb a verdict if the verdict is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice." *Hunt v. State*, 81 So. 3d 1141, 1146 (¶19) (Miss. Ct. App. 2011).

**DISCUSSION**

**I.      There was sufficient evidence Ratcliff possessed the pistol.**

¶20.    Ratcliff contends there was insufficient evidence to support his conviction of possession of a stolen firearm.  Specifically, he argues there was no proof he *knew* the pistol was stolen because there was no evidence of when or how it came into his possession.

¶21.    Per state law, "[I]t is unlawful for any person *knowingly* or intentionally to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm or attempt to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm."  Miss. Code Ann. § 97-37-35(1) (Rev. 2014) (emphasis added).

¶22.    Our inquiry is whether the State proved Ratcliff knowingly possessed a stolen firearm. "Guilty knowledge is the gist of the offense of receiving stolen property."  *Barton v. State*, 303 So. 3d 698, 701 (¶14) (Miss. 2020) (citing *Tubwell v. State*, 580 So. 2d 1264, 1266 (Miss. 1991)).  "For the state to prove guilty knowledge, it must prove that the defendant received the property under circumstances that would lead a reasonable person to believe that

5

it was stolen." *Id.* (quoting *Long v. State*, 933 So. 2d 1056, 1058 (¶6) (Miss. Ct. App. 2006)). To show guilty knowledge, "[t]he proof can be circumstantial." *Id.* at 701 (¶14) (citing *McClain v. State*, 625 So. 2d 774, 779 (Miss. 1993)).

¶23. Relying primarily on *Barton*, Ratcliff argues we should reverse as the Supreme Court did in that decision. A 911 caller identified the defendant chasing a child with a handgun. *Barton*, 303 So. 3d at 699 (¶3). Shortly after, law enforcement "stopped a truck with Barton as the passenger." *Id.* at (¶4). The officers found a stolen handgun "sticking out up underneath the seat" where Barton had been. *Id.*

¶24. He was arrested, indicted, and convicted, and the Court of Appeals affirmed the conviction. *Id.* at 700-01 (¶12). The Supreme Court granted "certiorari solely" to consider "the possession-of-a-stolen-firearm conviction[.]" *Id.* at 701 (¶12).

¶25. The Supreme Court found that "the State's evidence in this case is insufficient to show guilty knowledge." *Id.* at 703 (¶18). First of all, "the State presented no direct evidence," and "wholly relie[d] upon circumstantial evidence to establish the essential fact that Barton knew or should have known that the firearm was stolen property." *Id.* at (¶18). But "[t]he circumstantial evidence, considered in the light most favorable to the prosecution, fails in this case." *Id.* at (¶19).

¶26. In pointing out the weakness of the State's case, the Court seized upon the absence of proof that "show[ed] how Barton came to possess the hand gun or, alternatively, that Barton possessed recently stolen property." *Id.* "In fact, no evidence shows exactly when the firearm was stolen," the Court explained, as "[t]he record only shows that the owner went

6

to look for the firearm 'one day' and did not find it." *Id*. This was simply not enough circumstantial evidence to sustain the conviction. *Id*. at 704 (¶20).

¶27. Nor was the Court persuaded by the State's argument that "Barton knew the firearm was stolen because Barton attempted to conceal the firearm," as his actions could be seen as "equally plausible that Barton hid the handgun not because it was stolen but because he was, in fact, a convicted felon." *Id*. at 703 (¶19). This inference being equal, the circumstantial evidence did not meet the level of sufficiency of proof. *Id*.

¶28. The unanimous Court theorized what proof would have been sufficient to convict the defendant since "[t]he difficulty in this case for the prosecution is the dearth of evidence explaining how Barton came to possess the firearm in question." *Id*. at (¶20). Critically, the State had failed to adduce "evidence as to *when* the gun was stolen, which would provide proof that Barton was in possession of *recently stolen* property." *Id*. (emphasis added). "Combined with concealment, such evidence might be sufficient to overcome Barton's alternative theory" that he concealed the firearm "because he was a convicted felon," not because he knew it was stolen. *Id*.

¶29. To this point, the Supreme Court acknowledged, "[W]e have previously held that *concealment* offered as circumstantial evidence in a receiving-stolen-property case may be enough to show guilty knowledge when combined with unexplained possession of recently stolen property." *Id*. at 703 n.2 (emphasis in original) (citing *McClain*, 625 So. 2d at 781).

¶30. The difference between that decision and today's case are stark. While the evidence in this case was circumstantial, there was more than proof of mere concealment here.

7

Critically, the weakness in *Barton* was not repeated—here, the State presented evidence the Sig Sauer pistol was stolen through a police report. The pistol had been reported stolen twenty-five days before, as opposed to the proof in *Barton*, which did not explain "exactly when the firearm was stolen." *See Hobson v. State*, 181 So. 3d 1021, 1028 (¶16) (Miss. Ct. App. 2015) (affirming a conviction for possession of a stolen firearm when the gun was "stolen less than a month prior to [the defendant's] arrest"). The pistol was also found in the vicinity of where it was stolen—reportedly taken from a citizen's truck in Petal about 12.5 miles away from the party Ratcliff had attended in Hattiesburg. *See McClain*, 625 So. 2d at 777 (holding pistol recovered from defendant less than a day after it was stolen was sufficient circumstantial proof of guilty knowledge).[1]

¶31. Additional circumstantial evidence was presented to show Ratcliff knowingly possessed a stolen firearm. When asked by law enforcement whether any guns were in the vehicle, Ratcliff refused to answer. Yet the body-camera footage the fact-finders viewed showed the passenger telling the officers that Ratcliff had asked him to hand him the gun. Plus Ratcliff's own bag held magazines that fit the recently stolen pistol.

---

[1] The separate opinion would reverse and render this conviction, finding "the only notable distinction between *Barton* and this case is that in *Barton* there was no evidence of when or how the subject gun was stolen, whereas in this case there is . . . ." *See infra* ¶43. Yet as explained by our Supreme Court in both *Barton* and *McClain*, this distinction is crucial.

As the Court emphasized in *Barton*, "*concealment* offered as circumstantial evidence in a receiving-stolen-property case may be enough to show guilty knowledge *when combined* with unexplained possession of recently stolen property." *Id*. at 703 n.2 (first emphasis in original and second emphasis added) (citing *McClain*, 625 So. 2d at 781). Viewing the evidence in the light most favorable to the State, as we are bound to do, the evidence presented in this trial showed, at a minimum, Ratcliff's concealment of the firearm plus an unexplained possession of recently stolen property.

¶32.    The State argues that "[t]he evidence that was lacking in *Barton* was presented here." We agree.  Accordingly, we find that viewing the facts in the light most favorable to the State, there was sufficient circumstantial evidence to find Ratcliff knowingly possessed the stolen firearm.

## II.    Ratcliff's conviction of possessing a firearm as a felon was not against the overwhelming weight of the evidence.

¶33.    In his second assignment of error, Ratcliff claims the only evidence establishing that he possessed the gun came from his bag.  He stresses the bag had been sitting in the passenger's car while multiple people were in and out of it during the party, so he argues the weight of the evidence is against his conviction.[2]

¶34.    It is undisputed that Ratcliff is a felon.  "To establish a felon in possession of a firearm, the State has the burden to prove that the defendant was a convicted felon and willfully possessed a firearm."  *McGlothin v. State*, 238 So. 3d 1, 3 (¶10) (Miss. Ct. App. 2017) (quoting *Davis v. State*, 199 So. 3d 701, 703 (¶9) (Miss. Ct. App. 2016)). Possession "can be established constructively if the evidence demonstrates the defendant had dominion or control over the contraband." *Williams v. State*, 334 So. 3d 68, 73 (¶6) (Miss. 2022).  But when contraband "is found upon premises not in the exclusive control and possession of the

---

[2] The State claims this argument is procedurally barred since Ratcliff "did not move for a new trial below," citing *Ivory v. State*, 283 So. 3d 108, 117 (¶41) (Miss. 2019) (holding that an ore tenus motion for JNOV that did not include a request for a new trial did not preserve the argument).  This argument misses the mark, as Ratcliff's motion for a JNOV expressly requested "that the verdict [be] set aside and that a new trial is set for this Defendant."  The trial court's order denying this request held that "his request for a new trial is denied."  The procedural bar is not appropriate when a defendant expressly requests a new trial and the trial court expressly denies the request.

accused, additional incriminating facts must connect the accused with the contraband." *Booker v. State*, 324 So. 3d 322, 326 (¶16) (Miss. Ct. App. 2021) (quoting *Ginn v. State*, 860 So. 2d 675, 685 (¶32) (Miss. 2003)).

¶35. On the stand, Ratcliff denied knowledge of both the guns found in the Escalade and the ammunition found in his bag. He argued the SUV did not belong to him, the guns were concealed, and multiple people accessed the passenger's car where his bag was unattended throughout the party. Nonetheless, Ratcliff's bag contained magazines and bullets for the guns. Therefore, the State provided additional incriminating facts connecting Ratcliff to the gun. *See, e.g.*, *Williams v. State*, 971 So. 2d 581, 588 (¶19) (Miss. 2007) (State proved additional incriminating circumstances proving constructive possession when gun was found among items that defendant owned).

¶36. Ratcliff argues his bag cannot constitute an additional incriminating fact connecting him to the gun since multiple people had access to the vehicle while his bag was inside. He presented this same theory at trial and it was impliedly rejected. Juries "may believe or disbelieve, accept or reject, the utterances of any witness." *Johnson v. State*, 276 So. 3d 1195, 1200 (¶21) (Miss. Ct. App. 2018) (quoting *Gandy v. State*, 373 So. 2d 1042, 1045 (Miss. 1979)). "With regard to weight of the evidence, we will overturn a jury verdict only when it is so contrary to the evidence presented that to let it stand would sanction an unconscionable injustice." *Wilson v. State*, 936 So. 2d 357, 363 (¶16) (Miss. 2006). We find the conviction was not against the overwhelming weight of the evidence.

**CONCLUSION**

10

¶37. Finding there was sufficient evidence that Ratcliff knowingly possessed a stolen firearm and that the overwhelming weight of the evidence was not against his conviction of possession of a firearm by a felon, his convictions and sentences are **AFFIRMED**.

**CARLTON, P.J., GREENLEE, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., AND WESTBROOKS, J., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND WESTBROOKS, J.; McDONALD, J., JOINS IN PART.**

**WILSON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶38. I concur that the State presented sufficient evidence that Ratcliff constructively possessed the .45-caliber Sig Sauer pistol. Therefore, I concur that his conviction for possession of a weapon by a felon (Count II) should be affirmed. However, the evidence is insufficient to establish beyond a reasonable doubt that Ratcliff knew that the gun was stolen. Therefore, Ratcliff's conviction for possession of a stolen firearm (Count I) should be reversed and rendered.[3]

¶39. The Mississippi Supreme Court recently addressed a similar sufficiency-of-the-evidence challenge in *Barton v. State*, 303 So. 3d 698 (Miss. 2020). In *Barton*, law enforcement officers "stopped a truck with Barton as the passenger," and after Barton exited the truck, they discovered a gun "sticking out up underneath the [passenger] seat." *Id.* at 699 (¶4). Officers ran the serial number on the gun and learned that it "had been reported stolen."

---

[3] The circuit court imposed concurrent sentences of five years in the custody of the Department of Corrections for Count I and ten years in the custody of the Department of Corrections for Count II. Ratcliff was sentenced as a nonviolent habitual offender.

11

*Id.* "Barton denied that [the gun] was his" and "denied any involvement with the gun." *Id.* at 700 (¶¶7, 11). The gun's owner testified that he did not know who had stolen the gun and did not know Barton. *Id.* at (¶8). The gun's owner "was never asked directly if he knew when the gun was stolen." *Id.* The jury found Barton guilty of both possession of a stolen firearm and possession of a weapon by a felon, and this Court affirmed both convictions on appeal. *Id.* at 700-01 (¶12).

¶40. However, our Supreme Court granted certiorari and reversed Barton's conviction for possession of a stolen firearm. *Id.* at 701, 704 (¶¶12, 22). The Court held that "[g]uilty knowledge is the gist of the offense of" possession of a stolen firearm. *Id.* at 701 (¶14). "For the State to prove guilty knowledge, it must prove that the defendant received the [firearm] under circumstances that would lead a reasonable person to believe it was stolen." *Id.* (other brackets omitted). The Court stated that "[t]he dispositive issue in [Barton's] case [was] whether there [was] sufficient evidence to prove that Barton knew the firearm was stolen." *Id.* at (¶15). The Court held that the evidence against Barton was insufficient as a matter of law, reasoning as follows:

> The circumstantial evidence, considered in the light most favorable to the prosecution, fails in this case. No evidence shows how Barton came to possess the hand gun or, alternatively, that Barton possessed recently stolen property. In fact, no evidence shows exactly when the firearm was stolen. The record only shows that the owner went to look for the firearm "one day" and did not find it. Additionally, the State argues Barton knew the firearm was stolen because Barton attempted to conceal the firearm. But Barton is a convicted felon. . . . Barton's possession of a firearm as a convicted felon was illegal. It is equally plausible that Barton hid the handgun not because it was stolen but because he was, in fact, a convicted felon. While Barton denied the gun was his, this fact likewise supports both theories equally.

12

The difficulty in this case for the prosecution is the dearth of evidence explaining how Barton came to possess the firearm in question. There is also no evidence as to when the gun was stolen, which would provide proof that Barton was in possession of recently stolen property. Combined with concealment, such evidence might be sufficient to overcome Barton's alternative theory. . . . [H]owever, there was no evidence that would allow a jury to determine that it was more likely that Barton hid the gun because it was stolen rather than because he was a convicted felon. There was no physical evidence that could be interpreted nor was there witness testimony that would be subject to a jury's credibility determination. . . .

Considered in the light most favorable to the State, the evidence of possession of the stolen firearm combined with its concealment is insufficient to prove Barton knew the firearm was stolen . . . . The State failed to meet its burden on the possession-of-a-stolen-firearm charge. . . .

*Id.* at 703-04 (¶¶19-21) (footnotes and paragraph numbers omitted).

¶41. The evidence in this case is substantially similar to the evidence in *Barton*. The gun at issue in this case was found between the center console and the passenger seat, within Ratcliff's reach. Ratcliff denied knowledge of the gun and denied that it was his. Just as in *Barton*, the gun was concealed in a fashion, but "[i]t is equally plausible that [Ratcliff] hid the handgun not because it was stolen but because he was, in fact, a convicted felon." *Id.* at 703 (¶19). Also, as in *Barton*, although Ratcliff "denied the gun was his, this fact likewise supports both theories equally." *Id.*

¶42. Nonetheless, the State argues that *Barton* is distinguishable because in this case there *is* "evidence as to when the gun was stolen, which . . . provide[d] proof that [Ratcliff] was in possession of *recently stolen* property." *Id.* at (¶20) (emphasis added). Specifically, a police report was admitted into evidence to show that the Sig Sauer pistol was stolen from a truck parked at a residence in Petal on July 17 or 18, 2019, twenty-five or twenty-six days

13

before Ratcliff was arrested in Hattiesburg. The report stated that a Ruger .22-caliber rifle was stolen along with the Sig Sauer pistol; that the rifle was recovered on July 30, 2019, at the residence of Kristopher Morris; and that "Morris claimed that a[] . . . teen named Marco had stolen the rifle." No evidence was presented showing any connection between Ratcliff and Morris or "Marco." Nor was any other evidence presented regarding the theft of the pistol or how or when it came into Ratcliff's possession.

¶43.    Thus, the only notable distinction between *Barton* and this case is that in *Barton* there was no evidence of when or how the subject gun was stolen, whereas in this case there is proof that the subject gun was stolen twenty-five or twenty-six days prior to Ratcliff's arrest. However, standing alone, the mere fact that the gun was stolen weeks before Ratcliff's arrest is insufficient to distinguish *Barton* and likewise insufficient to prove beyond a reasonable doubt that Ratcliff knew that the gun was stolen. Just as in *Barton*, the evidence is insufficient because it remains equally plausible that Ratcliff concealed and denied knowledge of the gun because he is a felon, not because he knew the gun was stolen. Accordingly, I respectfully dissent from the affirmance of Ratcliff's conviction for possession of a stolen firearm (Count I). I concur that his conviction and sentence for Count II should be affirmed.

**BARNES, C.J., AND WESTBROOKS, J., JOIN THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**

14